DAVID SCOTT HARLOW, ET AL.

V.

LAURA BOMBERE CLATTERBUCK

Record No. 841361

January 17, 1986

Present: All the Justices

*Richard F. Gorman, III, Assistant Attorney General (William G. Broaddus, Attorney General; Donald C.J. Gehring, Deputy Attorney General; Mark R. Davis, Assistant Attorney General, on briefs), for appellants.*

*Michael J. McManus (Thomas E. Starnes; John D. Tew; Seifman, Semo, Slevin & Marcus, P.C.; Gillenwater, Donovan & Tew, on brief), for appellee.*

STEPHENSON, J., delivered the opinion of the Court.

In this action for personal injuries, Laura Bombere Clatterbuck recovered a $210,000 judgment against defendants David Scott Harlow, Edward Voss, and Abdul Madyun, employees of the Virginia Department of Corrections (the Department)[1]. The dispositive issue in this appeal is whether the trial court erred in failing to dismiss the action on the ground that judicial immunity shields the defendants from civil liability.

Because of the narrow issue on appeal, we will state only those facts material to its resolution. Phillip A. Boyd, age 16, was found

---

[1] Clatterbuck also sued T. Don Hutto, former Director of the Department; Carlton Bolte, Assistant Director of Community and Prevention Services of the Department; William Weddington, former Assistant Director of the Department, Division of Youth Services; Vincent Picciano, Director of Court Services, Juvenile and Domestic Relations District Court of Fairfax County; and John Fekety and Robert Kabrich, probation officers for the court responsible for juvenile aftercare services and probation. The trial court dismissed the suit as to Bolte and the Fairfax County employees (Picciano, Fekety, and Kabrich), and at trial, the jury found in favor of Hutto and Weddington.

guilty of assaulting a police officer by the Juvenile and Domestic Relations District Court of Fairfax County. In accordance with former Code § 16.1-180 (now Code § 16.1-285), Boyd was committed on October 12, 1976, to the Department for an indeterminate period, not to extend beyond his 21st birthday. Based on its evaluation of Boyd's delinquent status and social needs, the Department assigned Boyd to Beaumont Learning Center (Beaumont), a medium security institution without locks or guards.

At Beaumont, a team that included teachers, "house parents," a vocational instructor, and a rehabilitative counselor prepared a "treatment plan" for Boyd. This treatment team regularly scrutinized Boyd's conduct and monitored his progress throughout his confinement at Beaumont.

In January, 1977, defendant Madyun became Boyd's rehabilitative counselor. Madyun observed Boyd's relatively good behavior and, accordingly, prepared a letter in May, 1977, recommending that Boyd be discharged directly to his home under the supervision of his mother. Madyun's letter outlined Boyd's social needs and delinquent status at the time of his commitment and noted the progress he made while at Beaumont.

Boyd's aftercare counselor in Fairfax County reviewed and concurred in Madyun's recommendation. Madyun's letter was then forwarded to defendant Voss, Beaumont's director, who agreed with the proposal to discharge Boyd directly.

Finally, Madyun's letter was forwarded to defendant Harlow, the Department of Corrections' aftercare supervisor, who was responsible for making the final decision regarding Boyd's proposed discharge. Harlow reviewed Boyd's record, including his "needs assessment" developed at the time of his commitment, psychological test data, and progress reports prepared during his confinement. Additionally, Harlow compared Boyd's delinquency prior to his commitment with his conduct and performance while at Beaumont and determined the latter to be more significant. Based on his review, and after notifying the Fairfax County court, Harlow issued a discharge order for Boyd on June 8, 1977.

About 12 weeks after his discharge, Boyd and four accomplices robbed and cut the throats of Clatterbuck and three others. All four victims survived. Boyd, together with his accomplices, was convicted of this crime and is currently serving 60 years in the penitentiary.

In her motion for judgment, Clatterbuck asserts that the defendants knew or should have known that Boyd presented a danger to members of the public. Accordingly, Clatterbuck alleges that the defendants were grossly negligent in discharging Boyd without aftercare supervision and that this negligence proximately caused her injuries. Alternatively, Clatterbuck claims that the defendants are liable for her injuries because they failed to perform certain ministerial duties imposed upon them by statute and Department regulations.

Although the defendants have assigned a number of errors, we need address only one. Defendants contend on appeal, as they did at trial, that they are shielded from civil liability under the doctrine of judicial immunity.

It is clear that judges enjoy absolute immunity from civil liability, even when they act maliciously or corruptly or in excess of their jurisdiction. Judges can be held liable only when they act in "clear absence of all jurisdiction." *Johnston* v. *Moorman*, 80 Va. 131, 142 (1885). Compelling public policy in maintaining judicial independence is the basis for judicial immunity. A judicial officer must be able to exercise his judgment fully, freely, impartially, and without fear of being sued for damages by dissatisfied persons. *Id.* at 139.

Although judicial immunity, in its strictest sense, is limited to judges, quasi-judicial immunity may extend to other public officials acting within their jurisdiction, in good faith and while performing judicial functions. *See Yates* v. *Ley*, 121 Va. 265, 270, 92 S.E. 837, 839 (1917); *Johnston*, 80 Va. at 139, 141-42. In *Yates*, a notary public, in violation of applicable law, certified an acknowledgment on a deed of trust in which he was the trustee. Consequently, the acknowledgment was void, and the creditor was deprived of the lien represented by the deed of trust. In the creditor's action for damages against the notary, we held that the taking and certifying of an acknowledgment is a judicial act, and that because the notary acted within his jurisdiction and in good faith, he was absolutely immune from civil liability.

Similarly, in *Johnston*, a city mayor was sued for ordering the arrest and imprisonment of the plaintiff. We held that, because the act complained of "was done in the discharge of a judicial function," the doctrine of judicial immunity shielded the mayor from civil liability. 80 Va. at 146.

We must decide, therefore, whether the defendants were (1) performing judicial functions, (2) acting within their jurisdiction, and (3) acting in good faith.

■ First, we determine whether the defendants were performing judicial functions. In making this determination, we adopt the "functional comparability" test established by the United States Supreme Court in *Butz* v. *Economou*, 438 U.S. 478 (1978). Under this test, we must ascertain whether the procedure in question "shares enough of the characteristics of the judicial process that those who participate in such adjudication should also be immune from suits for damages." *Id.* at 512-13.

■ Because Boyd's commitment was indeterminate, the length of his confinement at Beaumont was a matter resting solely within the discretion of the Department. In exercising that discretion, the Department was required to consider the "welfare of the child and the interests of the public." Former Code § 16.1-180. Thus, the Department's role "shares enough of the characteristics of the judicial process" that the members of the Department who make these judgments must be immune from civil liability. Indeed, we believe the defendants' functions in this case possessed more judicial characteristics and responsibilities than those of either the notary in *Yates* or the mayor in *Johnston*. Moreover, the judgments made by the Department's employees under former Code § 16.1-180 are similar to those made by a court when it imposes sentences or determines probation revocations.

■ Specifically, Harlow's function was to examine Boyd's pre- and post-commitment records, review the recommendations made by Boyd's counselor, and decide whether, and under what conditions, Boyd should be released. Harlow's judgments are similar to those made by parole board members who have been held immune from damages in civil rights actions based on their decisions on parole applications. *See Sellars* v. *Procunier*, 641 F.2d 1295 (9th Cir.), *cert. denied*, 454 U.S. 1102 (1981); *Douglas* v. *Muncy*, 570 F.2d 499 (4th Cir. 1978); *Pope* v. *Chew*, 521 F.2d 400 (4th Cir. 1975); *Cruz* v. *Skelton*, 502 F.2d 1101 (5th Cir. 1974); *Silver* v. *Dickson*, 403 F.2d 642 (9th Cir. 1968), *cert. denied*, 394 U.S. 990 (1969); *Siess* v. *McConnell*, 74 Mich. App. 613, 255 N.W.2d 2 (1977) (parole board members immune from suit arising out of discretionary act of releasing prisoner); *Jarrett* v. *Wills*, 383 P.2d 995 (Ore. 1963) (superintendent of home for mentally deficient immune from liability based on temporary release of inmate); *Es-*

*tate of Armstrong* v. *Pa. Bd. of Probation*, 405 A.2d 1099 (Pa. 1979) (parole board members entitled to absolute immunity); *Reiff* v. *Commonwealth*, 354 A.2d 918 (Pa. 1976) (same).

Likewise, Madyun and Voss were responsible for investigating and submitting recommendations regarding the appropriateness of Boyd's release. Madyun's and Voss' duties are similar to those performed by probation officers when investigating and submitting recommendations to a court. *See Burkes* v. *Callion*, 433 F.2d 318, 319 (9th Cir. 1970) (probation officer immune from liability in submitting probation reports); *see also Spaulding* v. *Nielsen*, 599 F.2d 728 (5th Cir. 1979) (probation officer immune from suit when investigating and preparing presentence report); *Acevedo* v. *Pima County Adult Probation Dept.*, 142 Ariz. 319, 690 P.2d 38 (1984) (same); *Hulsman* v. *Hemmeter Development Corp.*, 65 Hawaii 58, 647 P.2d 713 (1982) (same). Additionally, their duties are similar to those made by parole board members when recommending to the Governor the granting or revocation of pardons. *See Pope*, 521 F.2d at 405-06 (parole board members immune from liability because they "perform a quasi-judicial function in making recommendations to the Governor regarding the granting or revocation of pardons").

■ It is in the interest of the public and of the committed child that the defendants, and other public officials who perform similar functions, be immune from suits for damages. The threat of such suits against these officials would have a chilling effect on their ability to perform their official duties. These officials must be free to discharge their duties fairly and impartially without fear of personal liability. If they were not shielded with quasi-judicial immunity, it is probable that their judgments would be always against a child's release. Indeed, the threat of civil suits would "dampen the ardor of all but the most resolute, or the most irresponsible, in the unflinching discharge of their duties." *Gregoire* v. *Biddle*, 177 F.2d 579, 581 (2nd Cir. 1949).

■ Second, we determine whether the defendants acted within their jurisdiction in releasing Boyd from Beaumont. The statute governing the commitment of children to the Department provided:

All commitments [of children to the Department] shall be for an indeterminate period having regard to the welfare of the child and interests of the public, but no child committed

hereunder shall be held or detained after such child shall have attained the age of twenty-one years . . . .

Former Code § 16.1-180. Once a child is committed to the Department of Corrections, the committing court surrenders and the Department assumes jurisdiction. The Department alone determines the length of a child's commitment and, if released, the conditions thereof. Accordingly, we hold as a matter of law that the defendants acted within the jurisdiction conferred by statute.[2]

Finally, Clatterbuck does not allege that the defendants acted in bad faith in releasing Boyd from Beaumont. Indeed, the record would not have supported such a claim.

We conclude, therefore, that the defendants were performing judicial functions,.and that they acted within their jurisdiction and in good faith. Because the defendants were entitled to quasi-judicial immunity, the trial court erred in failing to dismiss Clatterbuck's suit.

Accordingly, we will reverse the trial court's judgment and enter final judgment in favor of the defendants.

*Reversed and final judgment.*

POFF, J., concurring.

I agree that the decision below should be reversed, but I would reach the result by a different rationale. Applying the rules suggested in my concurring opinion in *Messina* v. *Burden*, 228 Va. 301, 314-15, 321 S.E.2d 657, 664-65 (1984), I would hold that the defendants in this case are clothed with public-servant immunity.

COMPTON, J., dissenting.

In a result-oriented decision, the majority proceeds to create a new species of immunity for Virginia. I cannot join that endeavor.

---

[2] At trial, Clatterbuck presented evidence that the defendants acted contrary to a Department guideline prohibiting a child's discharge without supervision unless the local aftercare officials refused to accept supervision. Although this evidence may have been germane to the issue of defendants' negligence had they not been immune from liability, it does not affect the Department's jurisdiction over Boyd's custody and release as prescribed in former Code § 16.1-180.

The trial court ruled, correctly in my opinion, that these State employees were entitled to sovereign immunity. Accordingly, the trial court required the plaintiff to establish that the defendants were grossly negligent in the discharge of their discretionary duties and that such negligence was a proximate cause of the plaintiff's injuries, sustained when her throat was slit by a juvenile delinquent who had been released from the State corrections system. The trial court's ruling was in accord with the body of law on the subject developed over the years in this State. The jury found, in a verdict confirmed by the trial court, that defendants' release of the juvenile delinquent was grossly negligent in view of the information concerning his history and propensity for violence and aggressive behavior.

Nevertheless, the majority now extends a type of *judicial* immunity to persons outside the class of judicial officers that are described in the Virginia cases cited in the majority opinion. Until today, this class included "the highest judge in the State" and extended "to the lowest officer who sits as a court and tries petty causes." *Johnston* v. *Moorman*, 80 Va. 131, 139 (1885). Now, the Court adds to the class an aftercare supervisor, a rehabilitative counselor, and a learning center supervisor in order to insulate those persons from tort liability for grossly negligent conduct.

I believe the trial court accorded these defendants all the immunity to which they were entitled. Thus, I would affirm the judgment in favor of the plaintiff.