PRESENT: All the Justices

RUTH S. ANDREWS

v.  Record No. 022434

WILLIAM DALE RING AND
JIMMY DON BOLT

WILLIAM COX

v.  Record No. 022243

WILLIAM DALE RING AND
JIMMY DON BOLT

OPINION BY
JUSTICE DONALD W. LEMONS
September 12, 2003

FROM THE CIRCUIT COURT OF GRAYSON COUNTY
Barnard F. Jennings, Judge Designate

In this consolidated appeal involving two separate suits alleging malicious prosecution and statutory conspiracy to cause injury to "reputation, trade, business or profession" against the Commonwealth's Attorney of Grayson County and the Building Inspector of Grayson County, we consider whether the trial court erred by granting defendants' motions for summary judgment. Because the trial court granted summary judgment pursuant to Rule 3:18, our review of the facts is limited to pleadings, orders, and admissions of the parties.

I.  Facts and Proceedings Below

During all times relevant to this case, Ruth S. Andrews ("Andrews") was the Chairperson of the Grayson County School Board; William Cox ("Cox") was the Director of School Maintenance for Grayson County; Jimmy Don Bolt ("Bolt") was the

Commonwealth's Attorney of Grayson County; and William Dale Ring ("Ring") was the Building Inspector of Grayson County.

On August 1, 2000, upon direction of Cox and on behalf of the Grayson County School Board, David G. Cornett, an employee of the Grayson County School Maintenance Department, applied for and received a building permit to install an above-ground storage tank on the premises of Grayson County High School. On August 7, 2000, employees in the Maintenance Department, personally supervised and directed by Cox, poured a concrete pad designed to support the proposed above-ground storage tank. At Cox's direction, the site upon which the concrete pad was poured had been excavated July 31, 2000, the day prior to issuance of the building permit. On August 28, 2000, Cox and Ring discussed the project, and Ring informed Cox that his office needed a letter from the project's architect "stating that the concrete pad was adequate to support the weight of the proposed storage tank." On September 6, 2000, Cox delivered a letter from William W. Huber, the project architect, to Ring, which "confirmed that a structural engineer evaluated the slab thickness needed to support the . . . tank and determined that the . . . pad was structurally adequate for supporting the proposed tank."

On September 8, 2000, at the direction of Bolt, Ring appeared before a magistrate for Grayson County, and filed a

2

criminal complaint against Andrews, Cox, and Dr. Alvin C. Proffit[1] ("Dr. Proffit"), the Superintendent of Grayson County Schools, alleging that they "[f]ailed to obtain a Building Permit before beginning work on a 10,000 Gallon Storage tank[]" and "[c]onceal[ed] work prior to the required inspection by pouring concrete slab."  On September 11, 2000, Andrews, Cox, and Dr. Proffit were served with warrants requiring them to appear before the General District Court of Grayson County for arraignment and trial.  However, on the date set for trial, October 3, 2000, Bolt moved the court to nolle prosequi the charges against all three defendants.  Bolt and Ring claim that the decision to nolle prosequi the charges was the result of settlement negotiations.  Andrews and Cox deny that any agreement to settle the criminal charges was reached.

On September 4, 2001, Andrews and Cox filed separate motions for judgment in the Circuit Court of Grayson County against Ring and Bolt alleging malicious prosecution and conspiracy to injure reputation, trade, business, and profession pursuant to Code §§ 18.2-499 and 18.2-500.  Ring and Bolt filed responsive pleadings which included several demurrers and special pleas of immunity.  On November 29, 2001, the parties

---

[1] Dr. Profitt, now a resident of North Carolina, filed an action similar to the present Virginia litigation against Ring and Bolt in the United States District Court for the Western District of Virginia, Abingdon Division.

3

appeared before the trial court to present argument on the demurrers and special pleas filed by Ring and Bolt. By order dated January 11, 2002, the trial court overruled Ring's and Bolt's special pleas of immunity without prejudice and overruled each demurrer. The trial court ordered Ring and Bolt to file grounds of defense.

On April 8, 2002, Ring and Bolt filed separate motions for summary judgment. On April 30, 2002, the trial court heard argument from the parties on the motions for summary judgment. With regard to the malicious prosecution allegation, the trial court held that there was sufficient probable cause justifying the issuance of the warrants. Additionally, the trial court held that Andrews and Cox could not recover damages for injury to their personal reputations under Code §§ 18.2-499 and -500. The trial court granted both motions for summary judgment. In its final order in each case, the trial court stated that "Defendants' Motions for Summary Judgment are GRANTED for the reasons and on the grounds stated on the record at the hearing of Defendants' motions and for the reasons and on the grounds stated in the Defendants' memoranda in support thereof." Andrews and Cox appeal the adverse judgments of the trial court.

## II. Analysis

Summary judgment upon all or any part of a claim may be granted to a party entitled to such judgment when no genuine

4

issue of material fact remains in dispute, and the moving party is entitled to judgment as a matter of law.  Rule 3:18; <u>Renner v. Stafford</u>, 245 Va. 351, 353, 429 S.E.2d 218, 220 (1993).  A grant of summary judgment must be based upon undisputed facts established by pleadings, admissions in pleadings, and admissions made in answers to requests for admissions.[2]  Additionally, the trial court must consider inferences from the facts in the light most favorable to the non-moving party, unless the inferences are strained, forced or contrary to reason.  <u>Carson v. LeBlanc</u>, 245 Va. 135, 139-40, 427 S.E.2d 189, 192 (1993).

Andrews and Cox present identical assignments of error. They assert that the trial court erred in granting summary judgment to Bolt and Ring on the statutory conspiracy count and on the malicious prosecution count of their respective motions for judgment, and they further assert that summary judgment should not have been granted before discovery was concluded.

A.  <u>Statutory Conspiracy under Code §§ 18.2-499 and -500</u>

Andrews and Cox each allege that "Ring and Bolt acted in concert to willfully and maliciously injure [them] in [their] business, trade, and reputation" and seek damages from Bolt and Ring under the statutory conspiracy provisions of Code §§ 18.2-

_____

[2] Of course, the trial court may consider the stipulations of the parties, answers to interrogatories and deposition

499 and -500.  A violation of Code § 18.2-499 is punished as a

Class 1 misdemeanor.  Additionally, Code § 18.2-500 provides a

civil remedy for a violation of Code § 18.2-499.  Bolt and Ring

argue that the scope of the conspiracy statute is limited to

injury to business interests and does not extend to injury to

personal reputation even in the context of employment.

The conspiracy statute was once codified as part of the

antitrust laws of the Commonwealth.  See Code § 59-21.1 (Cum.

Supp. 1962) (superseded).  In 1964, the General Assembly removed

the conspiracy provisions from the antitrust statutes and placed

them in the criminal code with much greater sanctions.  See Code

§ 18.1-74.1:1 (superseded) (Chapter 623, 1964 Acts of Assembly).

We conclude that the origin of Code §§ 18.2-499 and -500

establishes that they apply to business and property interests,

not to personal or employment interests.

Traditional statutory construction requires the same

conclusion.  Code § 18.2-499 proscribes conspiracy to

"willfully, and maliciously injur[e] another in his reputation,

trade, business or profession."  The maxim of noscitur a sociis

provides that the meaning of doubtful words in a statute may be

determined by reference to their association with related words

and phrases.  When general words and specific words are grouped

together, the general words are limited and qualified by the

_____

testimony if the parties agree.

6

specific words and will be construed to embrace only objects similar in nature to those objects identified by the specific words.  Commonwealth v. United Airlines, Inc., 219 Va. 374, 389, 248 S.E.2d 124, 132-33 (1978).  Here the word "reputation" is at issue.  Within the statute, its association with "trade, business or profession" requires the exclusion of personal reputation and interest in employment from the scope of the statute's coverage.  We note that federal courts in Virginia have reached similar holdings.  See Buschi v. Kirven, 775 F.2d 1240, 1259 (4th Cir. 1985), Nationwide Mut. Fire Ins. Co. v. Jones, 577 F.Supp. 968, 970 (W.D. Va. 1984).

The undisputed facts subject to proper consideration by the trial court upon motions for summary judgment on this issue clearly establish that Andrews and Cox seek damages for injury to personal reputation and employment interests.  As a matter of law, an action under the Code §§ 18.2-499 and –500 may not embrace such claims.  With causes of action based upon statutory conspiracy removed from consideration, we must now consider claims of malicious prosecution.

## B.  Immunity of the Prosecutor

Bolt, the Commonwealth's Attorney of Grayson County, maintains that, upon the record of these cases, he is entitled to absolute immunity from suit.  The absolute immunity of prosecutors from civil liability for acts within the scope of

7

their duties and intimately associated with the judicial phase of the criminal process is derivative of judicial immunity. As we have previously held, "[i]t is clear that judges enjoy absolute immunity from civil liability, even when they act maliciously or corruptly or in excess of their jurisdiction. Judges can be held liable only when they act in 'clear absence of all jurisdiction.' " Harlow v. Clatterbuck, 230 Va. 490, 493, 339 S.E.2d 181, 184 (1986) (quoting Johnston v. Moorman, 80 Va. 131, 142 (1885)). "The common-law immunity of a prosecutor is based upon the same considerations that underlie the common-law immunities of judges and grand jurors acting within the scope of their duties." Imbler v. Pachtman, 424 U.S. 409, 422-23 (1976).

In Imbler, the Supreme Court noted that the prosecutor's actions "were intimately associated with the judicial phase of the criminal process, and thus were functions to which the reasons for absolute immunity apply with full force." Id. at 430. But the Court specifically reserved the question "whether like or similar reasons require immunity for those aspects of the prosecutor's responsibility that cast him in the role of an administrator or investigative officer rather than that of advocate." Id. at 430-431.

Later, in Burns v. Reed, 500 U.S. 478 (1991) the Court held that absolute prosecutorial immunity from suit recognized in

_Imbler_ did not extend to giving advice to police officers.  The Court observed that:  "Absolute immunity is designed to free the _judicial_ _process_ from the harassment and intimidation associated with litigation. . . .  That concern therefore justifies absolute prosecutorial immunity only for actions that are connected with the prosecutor's role in judicial proceedings, not for every litigation-inducing conduct."  _Burns_ at 494.  In the case before us, Andrews and Cox argue that Bolt gave "advice" to Ring, and that pursuant to _Burns_, Bolt is not entitled to absolute immunity.  We disagree with Andrews and Cox because this Court is not compelled to follow _Burns_.

The determination whether absolute prosecutorial immunity is extended to the prosecutor in this case is a matter of state common law not federal law.  The principle is well-established in the seminal case of _Erie R.R. v. Tompkins_, 304 U.S. 64, 78 (1938), where the Court stated:

> Except in matters governed by the Federal Constitution or by Acts of Congress, the law to be applied in any case is the law of the State.  And whether the law of the State shall be declared by its Legislature in a statute or by its highest court in a decision is not a matter of federal concern.  There is no federal general common law.  Congress has no power to declare substantive rules of common law applicable in a State whether they be local in their nature or "general," be they commercial law or a part of the law of torts.  And no clause in the Constitution purports to confer such a power upon the federal courts.

9

This fundamental principle of federalism was expressed by the Supreme Court of North Carolina when it noted: "The views of the Supreme Court of the United States . . . are not binding upon this Court with regard to questions of North Carolina common law – questions as to which this Court's holding . . . is the final and controlling authority." Johnson v. Ruark Obstetrics & Gynecology Assoc., P.A., 395 S.E.2d 85, 92 (N.C. 1990). See also, Harter v. Vernon, 101 F.3d 334, 342 (4th Cir. 1996)("Our holdings on questions of state law do not bind state courts, nor do state court determinations on questions of federal law control us.").

The process by which an accused may be charged with a criminal offense in Virginia includes indictment, presentment, information, arrest warrant, or summons. When a prosecutor is involved in the initiation of the criminal process, it may take the form of preparation of an indictment for consideration by a Grand Jury, direction to a law enforcement officer to obtain a warrant or summons, or advice to a law enforcement officer that sufficient probable cause exists for the obtaining of a warrant or a summons. For the purposes of determining a prosecutor's absolute immunity from suit, these are distinctions without a material difference. In each case where a prosecutor is involved in the charging process, under Virginia law, that

10

action is intimately connected with the prosecutor's role in judicial proceedings and the prosecutor is entitled to absolute immunity from suit for such actions.  Consequently, Bolt is entitled to absolute immunity from suit on the counts in each motion for judgment alleging malicious prosecution. We do not decide in this case whether actions of a prosecutor in the role of investigator or administrator are entitled to absolute immunity.

C.   Malicious Prosecution Claims Against Ring

We have recently restated the following principles:

> In an action for malicious prosecution, the plaintiff has the burden of proving by a preponderance of the evidence that the prosecution was (1) malicious; (2) instituted by, or with the cooperation of, the defendant; (3) without probable cause; and (4) terminated in a manner not unfavorable to the plaintiff. . . .
> In the context of a malicious prosecution action, probable cause is defined as knowledge of such facts and circumstances to raise the belief in a reasonable mind, acting on those facts and circumstances, that the plaintiff is guilty of the crime of which he is suspected.  The determination whether a defendant had probable cause to believe that a crime was committed is judged with reference to the time the defendant took the action initiating the criminal charges.  When the facts relating to the question of probable cause are in dispute, the issue is one of fact to be resolved by the trier of fact.

Stanley v. Webber, 260 Va. 90, 95-96, 531 S.E.2d 311, 314-15 (2000) (internal citations omitted).  "[W]hat constitutes

probable cause is a question for the court; but where there is any conflict in the evidence it is for the jury to determine whether in the particular case such probable cause existed." Brodie v. Huck, 187 Va. 485, 488, 47 S.E.2d 310, 312 (1948). Additionally,

> [w]hen a defendant, in initiating a prosecution, acts in good faith upon the advice of reputable counsel, after a full disclosure of all material facts, he has probable cause to support his action. Probable cause serves as a complete defense to an action for malicious prosecution, even if the advice given by the attorney is wrong. The defendant must prove that he sought advice of counsel with an honest purpose of being informed of the law, that he made a full, correct and honest disclosure of all material facts known to him or which he should reasonably have known, and that he acted in good faith guided by the advice given by counsel. This defense usually presents a jury question unless reasonable minds cannot differ that advice of counsel has been established.

Pallas v. Zaharopoulos, 219 Va. 751, 755, 250 S.E.2d 357, 359-60 (1979) (internal citations omitted).

### 1. Probable Cause

The issuance of a criminal warrant must be supported by probable cause that a crime was committed and probable cause that the person charged committed the crime. Code § 36-106 provides sanctions for violation of the Uniform Statewide Building Code ("USBC"). Ring's affidavits supporting the issuance of criminal warrants against Andrews and Cox state:

12

"Failed to obtain a Building Permit before beginning work on a 10,000 Gallon Storage tank.  Concealing work prior to the required inspection by pouring concrete slab."  USBC § 107.1 provides that:

> [a]n application shall be submitted to the code official for the following activities, and these activities shall not commence without a permit being issued in accordance with Section 108.0[:]
>
> 1.  Construct or alter a structure.
> 2.  Construct an addition.
> 3.  Demolish or move a structure.
> 4.  Make a change of occupancy.
> 5.  Install or alter any equipment which is regulated by this code.
> 6.  Move a lot line which affects an existing structure.

USBC § 113.2 provides that:

> [t]he permit holder shall assure that the following inspections have been conducted and approved by the code official . . . :
> 1.  Inspection of footing excavations and reinforcement material for concrete footings prior to the placement of concrete.
> 2.  Inspection of foundation systems during phases of construction necessary to assure compliance with this code.
> 3.  Inspection of preparatory work prior to the placement of concrete.
> 4.  Inspection of structural members and fasteners prior to concealment.

Undisputed facts properly considered for resolution of a motion for summary judgment establish that excavation of the area for the tank occurred before the issuance of the building permit and that a concrete pad was poured without inspection.

13

Cox asserts that the building permit was issued to the School Board and not to him; consequently, he could not be held responsible for violations of the USBC. But the undisputed facts establish that Cox was Director of School Maintenance, he was supervising the construction for the tank, he directed a construction company to excavate the site on the day before the permit was issued, he directed an employee to obtain the permit, and he and persons under his direction poured concrete before obtaining an inspection. When a corporation or other entity acts through individuals and such action "involves a violation of the law, the correct rule is that all who participate in it are liable." Crall v. Commonwealth, 103 Va. 855, 859, 49 S.E. 638, 640 (1905).

Andrews and Cox maintain that there is a factual dispute over whether a building permit was required for the excavation and whether an inspection was required before pouring concrete. The interpretation of the requirements of the USBC is a matter of law, implicitly resolved against them by the trial court's ruling from the bench that "there was probable cause for the issuance of [the warrants]."

The undisputed facts properly considered upon motion for summary judgment establish that probable cause existed for the issuance of the warrant against Cox. But this record does not support a finding upon summary judgment that the warrant against

14

Andrews was issued with probable cause that Andrews participated in any acts in violation of the law. Andrews was the Chairperson of the Grayson County School Board, an unlikely person to be directing on-site construction and pouring concrete. At this stage in the proceeding there is no evidence of any act on her part that provided probable cause that she committed the building code violation in question, and her status as Chairperson of the School Board does not result in vicarious liability for the acts in question.

## 2. Advice of Counsel Defense

Reliance upon advice of reputable counsel after full disclosure of all material facts provides a complete defense to an action for malicious prosecution, even if the attorney's advice is wrong. Justified reliance suffices to establish probable cause to support the initial prosecution. Noell v. Angle, 217 Va. 656, 660, 231 S.E.2d 330, 333 (1977). In this case, it is unclear whether an accurate disclosure of all material facts was made. Upon review of this record, we hold that the evidence properly considered for summary judgment purposes does not support a grant of summary judgment on this question.

## 3. Voluntary Compromise of Criminal Complaints

A voluntary compromise ending a criminal prosecution defeats a subsequent suit for malicious prosecution. Orndorff

v. Bond, 185 Va. 497, 502, 39 S.E.2d 352, 354 (1946).  Ring alleges that such a compromise was reached in the General District Court of Grayson County when the nolle prosequi was entered in the underlying criminal matters.  Andrews and Cox say that no agreement was reached.  It is undisputed that a nolle prosequi was entered.  Why it was entered and whether it was the result of a compromise cannot be determined by summary judgment on this record.

### 4.  Quasi-Judicial Immunity

Ring maintains that he is entitled to the absolute immunity provided by quasi-judicial immunity because he characterizes his actions as those of a prosecutor, involving functions intimately related to the judicial process.  As previously addressed, under defined circumstances, a prosecutor may have absolute immunity, in the nature of quasi-judicial immunity, from civil liability.  Burns, 500 U.S. at 492; Imbler, 424 U.S. at 430.  We have recognized that quasi-judicial immunity may extend to certain non-judicial public officials acting within their jurisdiction, in good faith, and while performing judicial functions.  Harlow, 230 Va. at 493, 339 S.E.2d at 184.  In conducting this analysis, we apply "the 'functional comparability' test established by the United States Supreme Court in Butz v. Economou, 438 U.S. 478 (1978)."  Harlow, 230 Va. at 494, 339 S.E.2d at 184.  We must examine whether the act in question shares enough of the

16

characteristics of the judicial process to justify immunity.  We conclude that Ring's duties as a building inspector are more akin to those of a police officer in the enforcement of laws, rules and regulations, than a prosecutor in the judicial process.  As a matter of law, Ring is not entitled to the absolute immunity afforded by quasi-judicial immunity.

### 5.  Qualified Immunity

In the alternative, Ring maintains that if he is not entitled to quasi-judicial immunity, he is, nonetheless, entitled to the same qualified immunity extended to police officers for actions taken in good faith and with probable cause.  See Pierson v. Ray, 386 U.S. 547, 557 (1967).  "A defendant who asserts the qualified immunity defense, not the plaintiff, must allege and prove the elements comprising this defense."  Jordan v. Shands, 255 Va. 492, 499, 500 S.E.2d 215, 219 (1998).  Ring argues that Andrews and Cox have "not presented any facts that support a claim of actual malice."  On this question the burden of proof is on Ring, not Andrews and Cox.  Upon review of this record, we hold that the evidence properly considered for summary judgment purposes does not support a grant of summary judgment on this question.

### D.  Grant of Summary Judgment Before Conclusion of Discovery

17

The pre-trial scheduling order entered in early February, 2002, set the first day of trial in these cases for June 6, 2002. Andrews and Cox thereafter noticed depositions of an employee of the Maintenance Department of the School Board and the attorney for the School Board, for the afternoon of April 30, 2002, the same day as the motions for summary judgment were to be heard before the trial court. Andrews and Cox assert that the trial court erred in granting summary judgment from the bench on April 30 (memorialized later in the final orders in June and July, 2002), prior to the conclusion of discovery in the case. This argument has no merit. Pursuant to the pre-trial order the deadline for serving written discovery was mid-April, 2002. No written discovery was pending response as of the latter half of April, 2002. Without agreement of the parties, only answers to requests for admissions could further supplement the evidence properly considered by the trial court for the motions for summary judgment. The noticed depositions could not, absent stipulation of the litigants, have been used as the basis for summary adjudication. Simply stated, Andrews and Cox cannot show that the record upon which summary judgment was granted would have been any different if the trial court had delayed its ruling.

III. <u>Conclusion</u>

The trial court did not err in its grant of summary judgment against Andrews and Cox upon their causes of action for statutory conspiracy under Code §§ 18.2-499 and -500. On the remaining causes of action for malicious prosecution, the trial court did not err in its grant of summary judgment in favor of Bolt. Because the undisputed facts properly considered upon motion for summary judgment demonstrate that there was probable cause for the issuance of the criminal warrant against Cox, the trial court did not err in granting summary judgment for Ring on Cox's suit for malicious prosecution. However, the evidence properly considered by the trial court upon summary judgment did not support a finding of probable cause for the issuance of a criminal warrant against Andrews. Furthermore, Ring's various remaining defenses either are not available to him as a matter of law or they are insufficient on this record to support a grant of summary judgment. Accordingly, the trial court erred in granting summary judgment in favor of Ring and dismissing Andrews' cause of action for malicious prosecution. For the reasons stated, the judgment of the trial court will be affirmed in part, reversed in part and Andrews' cause of action for malicious prosecution against Ring will be remanded for further proceedings.

Record No. 022434 – <u>Reversed in part, affirmed in part, and remanded</u>.

19

Record No. 022243 - <u>Affirmed.</u>