PRESENT: All the Justices

SHEILA VIERS

OPINION BY
JUSTICE WILLIAM C. MIMS
May 14, 2020

v. Record No. 190222

CHADWICK SETH BAKER

FROM THE CIRCUIT COURT OF DICKENSON COUNTY
Colin R. Gibb, Judge Designate

In this appeal, we consider whether a Commonwealth's attorney enjoyed absolute

immunity from a claim for defamation by a former employee and whether the former employee

sufficiently pled a claim of intentional infliction of emotional distress.

## I. BACKGROUND AND MATERIAL PROCEEDINGS BELOW

"As the present case was decided on demurrer, we recite the facts contained in the

pleadings and all reasonable inferences therefrom in the light most favorable to the plaintiff."

*Coutlakis v. CSX Transp., Inc.*, 293 Va. 212, 215 (2017) (internal quotation marks omitted).

Chadwick Seth Baker was elected to succeed Joshua Hunter Newberry as the

Commonwealth's attorney for Dickenson County in November 2015. Sheila Viers had been an

administrative assistant in the Commonwealth's attorney's office for more than 29 years. Viers

alleged that soon after the election, she happened to see Baker at the Clintwood post office,

congratulated him, and asked if she should be worried about her job because she had heard

rumors of forthcoming personnel changes. Baker assured her that they were only rumors and

that she would keep her job. Prior to taking office, Baker also met with the administrative staff

and assured them that he would retain them all.

On January 4, 2016, Viers alleged that Baker called her into his office, told her that it was

dirty, and fired her. Cleaning the Commonwealth's attorney's office was not among her

assigned duties. Later that evening, Baker met with Newberry and complained that he was unable to access his office computer. Newberry explained that he had "removed his password" but gave Baker information enabling him to create a new one.

Viers and her husband were both active members of the Democratic Party. Baker had been the Democratic nominee in the election. News of the firing caused consternation as it spread among local Democrats and other members of the community. Viers alleged that at a January 12 meeting of the Dickenson County Democratic Committee ("DCDC"), Baker told those present that he fired Viers because his office computer had been wiped clean and he could not use it. He knew that the statement was false because he knew that the computer had actually been merely temporarily inaccessible, and the true reason was that Newberry had "removed" the password. He made the false statement intending that those present would believe that Viers had been responsible and that it was the reason that he fired her. Baker's false statement was not related to any possible pending or forthcoming criminal investigation. Baker made similar statements to others, including the county administrator, whom he told that he had fired Viers because she had tampered with his office computer.[1]

After applying for unemployment benefits, Viers prevailed in an administrative proceeding to determine whether she had been fired for misconduct. She subsequently obtained employment in another Commonwealth's attorney's office at a lower salary.

In May 2018, Viers filed a second amended complaint alleging intentional infliction of emotional distress and defamation. Relating to the first count, she alleged that Baker had lied to her when he assured her that she would keep her job, when he told her that she was being fired because his office was dirty, and when he told others that she had tampered with his office

---

[1] Such an act could constitute computer trespass, in violation of Code § 18.2-152.4.

2

computer. These intentional acts caused her to suffer emotional distress, diarrhea, and vomiting; to be afraid to leave the house and to seek counseling; and to lose income and retirement benefits.

Relating to the defamation count, Viers alleged that Baker knowingly and intentionally falsely accused her of committing the crime of computer trespass, constituting defamation per se. He made the accusation intending to injure her reputation. As a result of his false statements, she suffered humiliation and loss of reputation.

Baker thereafter filed a demurrer and motion to dismiss. Regarding the first count, he asserted that he could not be liable for any assurances of employment made before January 1, 2016, when he took office. Thereafter, he could have fired Viers, an at-will employee, for any reason or none at all. Firing an at-will employee does not give rise to a claim for intentional infliction of emotional distress because it is not improper conduct. In any event, the injuries alleged in the second amended complaint were insufficient for such a claim. He also asserted that statements contained in exhibits to Viers' original complaint contradicted her claim for intentional infliction of emotional distress because they showed that he had no malicious motive in firing her.

Regarding the defamation count, he denied making the statement at the DCDC meeting and asserted that even if he had, the second amended complaint failed to allege that he said that Viers was the person who had wiped his office computer clean so that he could not use it. He also asserted that the county administrator did not remember Baker making the alleged statement to him. Citing *Lux v. Commonwealth*, 24 Va. App. 561 (1997), he also argued that even if he had made the statements as alleged, he could not be liable because under 42 U.S.C. § 1983 he enjoyed qualified immunity for actions performed in his administrative and investigative

3

functions as a prosecutor, and absolute immunity for actions within the scope of initiating and pursuing any criminal prosecution.

After a hearing, the circuit court entered a final order sustaining Baker's demurrer. Regarding the first count, it incorporated its earlier order sustaining Baker's demurrer to Viers' original complaint. In that order, it ruled both that termination of at-will employment did not give rise to a claim for intentional infliction of emotional distress and that the complaint was insufficient because it lacked "clear and convincing evidence."

Regarding the defamation claim, the court ruled that Baker enjoyed absolute immunity because his alleged statements concerned his office computer, "an essential tool connected to his basic trial advocacy duties" "contain[ing] his calendar, a docket and other information critical to the running of his office." It therefore dismissed the case.

We awarded Viers this appeal.

## II. ANALYSIS

When reviewing a ruling sustaining a demurrer, we accept as true all allegations of historical fact pleaded in the complaint and interpret them in the light most favorable to the plaintiff. We review the circuit court's legal conclusions de novo. *Parker v. Carilion Clinic*, 296 Va. 319, 330 (2018).

## A. DEFAMATION AND ABSOLUTE IMMUNITY

In her first assignment of error, Viers asserts that the circuit court erred by ruling that Baker enjoyed absolute immunity from her defamation claim, both because (1) his defamatory statements to the DCDC were not made within the performance of his official duties and (2) she alleged that he acted maliciously. She argues that under *Andrews v. Ring*, 266 Va. 311, 320 (2003), immunity arises only if the tortious act is "intimately associated with the judicial phase

4

of the criminal process." She contends that the circuit court did not evaluate whether Baker's statement to the DCDC met that standard because it mistakenly applied federal immunity law, on which Baker had incorrectly relied below. Under *Andrews*, absolute immunity is an issue of state, not federal, law. Under Virginia law, absolute immunity arises from judicial immunity, which enables judges to exercise their discretion in judicial proceedings without fear of retaliatory private litigation. According to Viers, the context of Baker's statements is so attenuated from that purpose that absolute immunity cannot apply. She argues that the mere fact that he was the Commonwealth's attorney at the time he made the statements does not clothe him with absolute immunity when performing acts unrelated to his official duties.

We agree both that the circuit court erroneously applied federal immunity law and that, under the standard applicable in Virginia law, Baker does not enjoy absolute immunity from Viers' claim for defamation.

In *Lux*, the only Virginia case Baker cited in his demurrer to support his immunity argument, the Court of Appeals reviewed a claim by a criminal defendant that a Commonwealth's attorney should have been disqualified in a proceeding to revoke his suspended sentence. The defendant, who had sued the Commonwealth's attorney in a then-pending federal court action for damages under 42 U.S.C. § 1983, asserted that the federal lawsuit created a conflict of interest and moved that he be disqualified. 24 Va. App. at 566-67.

The Court of Appeals, affirming the circuit court's denial of the motion, ruled that the federal lawsuit created no conflict of interest because the Commonwealth's attorney was absolutely immune from suit under § 1983. *Id*. at 570 (citing *Imbler v. Pachtman*, 424 U.S. 409, 430-31 (1976)). Reviewing the relevant federal caselaw, the Court of Appeals noted that § 1983 afforded

5

either qualified immunity or absolute immunity. *See Buckley v. Fitzsimmons*, 509 U.S. 259, 268-69, (1993). Under qualified immunity,

> government officials are not subject to damages liability for the performance of their discretionary functions when "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."

*Id*. (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). With absolute immunity, government officials have "absolute protection from damages liability." *Id*. While state prosecutors have qualified immunity from liability under § 1983 for actions performed in their administrative and investigative functions, *id*. at 271-75, they enjoy absolute immunity from monetary judgments for actions "intimately associated with the judicial phase of the criminal process," including "initiating a prosecution and . . . presenting the state's case." *Imbler*, 424 U.S. at 430-31.

*Lux*, 24 Va. App. at 570-71 (footnote omitted). This immunity includes intentional torts, such as malicious prosecution. *Id.* at 571 (citing *Elder v. Athens-Clarke Cnty.*, 54 F.3d 694, 695 (11th Cir. 1995) and *Rose v. Bartle*, 871 F.2d 331, 347 (3d Cir. 1989)).

However, federal immunity law applies to state officials only when subjected to claims under federal law, such as 42 U.S.C. § 1983.[2] Consequently, the federal immunity doctrines discussed in *Lux* are independent of state immunity doctrines. Applying these principles to the facts of this case, federal immunity does not apply because Viers presented no § 1983 claim or any other claim under federal law.[3]

---

[2] *Compare Andrews*, 266 Va. at 320 (noting that questions of immunity for state officials from state tort claims in state court are a matter of state, not federal, law) *and Elwood v. Rice Cnty.*, 423 N.W.2d 671, 677 (Minn. 1988) (rejecting an argument that § 1983 immunity applied to state law claims against state officials) *with Cantu v. Rocha*, 77 F.3d 795, 805 (5th Cir. 1996) ("Federal immunity law shields state officials from personal liability under *federal* law for civil damages." (emphasis added.)) *and Burke v. Twp. of Cheltenham*, 742 F. Supp. 2d 660, 676 (E.D. Pa. 2010) (construing the defendants' motion to dismiss as applicable only to the federal law claims, not state law claims joined under the court's pendent jurisdiction, because the motion invoked only § 1983 immunity to the exclusion of separate state law immunity defenses).

[3] In his demurrer, Baker also asserted that he was entitled to qualified immunity, noting that in *Lux*, the Court of Appeals recognized that the "[a]dministrative . . . functions" giving rise

6

Under Virginia law, judges are entitled to absolute immunity, except "when they act in 'clear absence of all jurisdiction.'" *Harlow v. Clatterbuck*, 230 Va. 490, 493 (1986) (quoting *Johnston v. Moorman*, 80 Va. 131, 142 (1885)).[4]  This immunity ensures judicial independence "without fear of being sued for damages by dissatisfied persons."  *Id*. (citing *Johnston*, 80 Va. at 139).  Absolute judicial immunity is limited to judges, but "quasi-judicial immunity may extend to other public officials."  *Id.*

---

to such immunity include giving statements to the media.  *Id.* at 571 n.3 (citing *Buckley*, 509 U.S. at 273-77).  However, qualified immunity is also a federal immunity doctrine and does not apply to state tort claims brought against state officials in Virginia courts.  Rather, in appropriate cases, such officials may invoke sovereign immunity, *see Amato v. City of Richmond*, 875 F. Supp. 1124, 1143 (E.D. Va. 1994), which is analyzed under the familiar four-prong test articulated in *James v. Jane*, 221 Va. 43, 53 (1980).  *Pike v. Hagaman*, 292 Va. 209, 215 (2016).

[4] We have explained the distinction between judges who act merely "in excess of their jurisdiction," who are afforded judicial immunity, *Harlow*, 230 Va. at 439, and those who act in "the clear absence of all jurisdiction over the subject-matter," who are not, *Johnston*, 80 Va. at 141, as the difference between "where there is a clear absence of all authority as contradistinguished from mere excess of authority."  *Id.* at 142.  "'Where there is clearly no jurisdiction over the subject-matter, any authority exercised is a usurped authority, and for the exercise of such authority, where the want of jurisdiction is known to the judge, no excuse is permissible.'"  *Id.* at 141 (quoting *Bradley v. Fisher*, 80 U.S. (13 Wall.) 335, 351-52 (1871)).

> Thus, if a probate court, invested only with authority over wills and the settlement of estates of deceased persons, should proceed to try parties for public offences, jurisdiction over the subject of offences being entirely wanting in the court, and this being necessarily known to its judge, his commission would afford no protection to him in the exercise of the usurped authority.  But if on the other hand a judge of a criminal court, invested with general criminal jurisdiction over offences committed within a certain district, should hold a particular act to be a public offence, which is not by the law made an offence, and proceed to the arrest and trial of a party charged with such act, or should sentence a party convicted to a greater punishment than that authorized by the law upon its proper construction, no personal liability to civil action for such acts would attach to the judge, although those acts would be in excess of his jurisdiction, or of the jurisdiction of the court held by him, for these are particulars for his judicial consideration, whenever his general jurisdiction over the subject-matter is invoked.

*Bradley*, 80 U.S. (13 Wall.) at 352.

Whether quasi-judicial immunity applies turns on "whether the defendants were (1) performing judicial functions, (2) acting within their jurisdiction, and (3) acting in good faith." *Harlow*, 230 Va. at 494; *accord Andrews*, 266 Va. at 325 ("[Q]uasi-judicial immunity may extend to certain non-judicial public officials acting within their jurisdiction, in good faith, and while performing judicial functions."). The question of whether a defendant was performing a judicial function depends on "whether the procedure in question 'shares enough of the characteristics of the judicial process that those who participate in such adjudication should also be immune from suits for damages.'" *Id.* (quoting *Butz v. Economou*, 438 U.S. 478, 512-13 (1978)).

In *Andrews*, we held that quasi-judicial immunity afforded "absolute immunity [to] prosecutors from civil liability for acts within the scope of their duties and intimately associated with the judicial phase of the criminal process." 266 Va. at 320. The precise issue in that case was whether absolute immunity applied to a Commonwealth's attorney's initiation of criminal process. *Id.* at 321. We reasoned that the underlying policy justifications for judicial immunity also applied to prosecutors, *id.* at 320 (citing *Imbler*, 424 U.S. at 422-23)—i.e., ensuring that the prosecutor is not deterred from doing his duty by fear of retaliatory lawsuits from those he had accused whose charges were later dismissed or who were acquitted. *Imbler*, 424 U.S. at 423-24 (quoting *Pearson v. Reed*, 44 P.2d 592, 597 (Cal. App. 1935)).

Baker argues that under Virginia law, judicial officers enjoy absolute immunity because they must be free to exercise their judgment without fear of being sued. He argues that this includes the operation of a Commonwealth's attorney's office, citing *Penick v. Ratcliffe*, 149 Va. 618, 627-28 (1927). In *Penick*, we ruled that absolute privilege applied to every proceeding relating to the administration of justice. He contends that he was not free to exercise his

judgment because he could not access his computer, which the circuit court correctly recognized was an "essential tool" for the performance of his official duties.

Baker's argument reveals a fundamental misapprehension of the nature of Viers' claim, which does not challenge his decision to fire her. Rather, it is based on the allegedly false justification for that decision that he gave in his statements to the DCDC and the county administrator.[5]

We need not and do not consider in this case whether absolute, quasi-judicial immunity applies to a Commonwealth's attorney's decision to fire an employee because the only issue here is whether it applies to a Commonwealth's attorney's allegedly defamatory statements about why he made that decision. Under the facts as alleged in this case—i.e., that Baker made the statements solely for the purpose of assuaging the discontent growing among his constituents and members of his political party, without any plausible connection to a tenable pending or forthcoming criminal prosecution—it does not. That context does not "share[] enough of the characteristics of the judicial process" to qualify as "performing judicial functions" as required for quasi-judicial immunity under *Harlow*. 230 Va. at 494. It likewise did not fall "within the

---

[5] Baker also argued in his demurrer that his alleged statement to the DCDC, as Viers described it in her second amended complaint, did not specifically name her as the person who had wiped his computer clean, thereby rendering it unusable. However, she alleged that Baker "intended by his statement for the listeners to believe that [she] was responsible for his computer's condition" and that the context in which he made it was to provide his supposed justification for firing her. These allegations sufficiently allege the necessary colloquium to survive demurrer. *Webb v. Virginian-Pilot Media Companies, LLC*, 287 Va. 84, 88 (2014) (noting that a colloquium is "an explanation of how the allegedly defamatory statement refers to the plaintiff, if he is not explicitly named"). At trial, she must of course prove that the statement "was intended to refer to [her] and would be so understood by persons [hearing] it." *Gazette, Inc. v. Harris*, 229 Va. 1, 37 (1985). The statement "is not actionable, unless the allegations and supporting contemporaneous facts connect the libelous words to the plaintiff." *Id.*

9

scope of [his prosecutorial] duties and [was not] intimately associated with the judicial phase of the criminal process" under *Andrews*. 266 Va. at 320.

Accordingly, we will reverse the circuit court's judgment sustaining Baker's demurrer to the defamation claim in Viers' second amended complaint.

### B. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

In her second assignment of error, Viers asserts that the circuit court erred by ruling that the second amended complaint did not allege a cause of action for intentional infliction of emotional distress because the tort did not lie for termination of at-will employment and because the pleading lacked "clear and convincing evidence." First, she argues that her claim was not based on her firing but on Baker's intentional, false accusations that she had tampered with his office computer. Second, she argues that a plaintiff needs *no* evidence to overcome a demurrer, which is a responsive pleading that assumes that the allegations in the complaint are true. She contends that her second amended complaint adequately alleged all of the elements of an intentional infliction of emotional distress cause of action—i.e., that the defendant acted intentionally or recklessly, that the conduct was outrageous or intolerable, that the conduct caused the emotional distress, and that the distress was severe. We disagree that, as alleged, Baker's conduct was outrageous or intolerable, so we need not consider what the circuit court intended when it ruled that the complaints lacked "evidence."

To adequately plead a claim for intentional infliction of emotional distress, a plaintiff must allege that "1) the wrongdoer's conduct was intentional or reckless; 2) the conduct was outrageous or intolerable; 3) there was a causal connection between the wrongdoer's conduct and the resulting emotional distress; and 4) the resulting emotional distress was severe." *Almy v. Grisham*, 273 Va. 68, 77 (2007).

10

Baker's conduct as alleged by Viers was not outrageous or intolerable.  In *Almy*, we noted that "the term 'outrageous' does not objectively describe particular acts but instead represents an evaluation of behavior."  273 Va. at 78.  To survive demurrer, the behavior alleged must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  *Id.* (internal quotation marks omitted).  The alleged conduct here—i.e., that Baker intentionally inflicted emotional distress not by firing Viers but by allegedly lying to the DCDC and the county administrator when justifying his decision to do so—does not meet this standard.

Accordingly, the circuit court did not err by sustaining Baker's demurrer to Viers' intentional infliction of emotional distress claim.

### III.  CONCLUSION

For the reasons set forth above, we hold that the circuit court correctly ruled that the conduct alleged was insufficient to state claim for intentional infliction of emotional distress and we will affirm the court's judgment sustaining the demurrer to that claim.  We also hold that the court erred by ruling that Baker was absolutely immune from Viers' defamation claim.  We will reverse its judgment sustaining the demurrer to that claim and remand for further proceedings.

*Affirmed in part,*
*reversed in part,*
*and remanded.*