Present:  All the Justices

MARY RENKEY, ET AL.

v.  Record No. 052139  OPINION BY JUSTICE CYNTHIA D. KINSER
                                         September 15, 2006
COUNTY BOARD OF ARLINGTON COUNTY, ET AL.

FROM THE CIRCUIT COURT OF ARLINGTON COUNTY
Benjamin N.A. Kendrick, Judge

In this zoning dispute, the dispositive issue is whether the circuit court erred by deciding that certain language in the first paragraph of Arlington County Zoning Ordinance (ACZO) § 27A is a preamble and not an operative part of the ordinance.  We conclude that the language in question sets out mandatory, eligibility criteria for a certain zoning classification and is not merely part of a preamble.  Therefore, we will reverse the circuit court's judgment.

RELEVANT FACTS AND PROCEEDINGS

The First Baptist Church of Clarendon (FBCC) owns certain lots located in the Clarendon area of Arlington County.  The property is situated near a metrorail station and was designated "Semi-Public" in the Arlington County General Land Use Plan.  One portion of the subject property was zoned to a General Commercial District (designated "C-3"), while the remaining portion was zoned to a One-Family, Restricted Two-Family Dwelling District (designated "R-5").

FBCC and a related entity known as First Baptist Church of Clarendon Development Corporation (collectively, the Church), sought to construct on the property a multi-story building that would include a church sanctuary, church offices, and 116 residential units, 60 percent of which would be leased at affordable rental levels based on the official area family median income. The new structure would replace the existing church building and sanctuary, but FBCC's present educational building would be retained. The educational building is situated along the side of the subject property nearest to a residential neighborhood.

In order to proceed with the proposed project, FBCC applied for an amendment to the General Land Use Plan to change the subject property's designation from "Semi-Public" to "Medium Density Mixed-Use," a re-zoning of the "C-3" portion of the property and a part of the "R-5" portion to a Commercial Redevelopment District (designated "C-R"), and approval of a special exception site plan for the residential units. On October 23, 2004, the County Board of Arlington County (the County) approved FBCC's various applications.[1]

---

[1] The County also approved a conditional loan commitment up to 4.5 million dollars to the First Baptist Church of Clarendon Development Corporation as financial assistance to construct the Views of Clarendon Apartments.

Mary Renkey and seven other individuals[2] (collectively, the Residents), who reside in close proximity to the subject property, challenged the County's action by filing a second amended bill of complaint seeking a declaratory judgment and injunctive relief against the Church and the County. The Residents' allegations centered around their contention that the County had violated the ACZO by approving the Church's construction of a building that exceeded the 55-foot height restriction for by-right development in the "C-R" zoning district as well as the 3.0 floor area ratio limitation.[3] As pertinent to the issue in this appeal, the Residents alleged that the County violated ACZO § 27A by re-zoning a portion of the subject property from "R-5" to "C-R" without that portion first being zoned "C-3."

With regard to the re-zoning issue, the Residents filed a pre-trial motion for summary judgment and asserted that the County's re-zoning of the "R-5" portion of FBCC's property to "C-R" violated an eligibility requirement set forth in ACZO § 27A, which states that, in order "to be eligible" for "C-R" classification, the "site shall be

---

[2] The other individuals are Zuard Renkey, Joan Rohfling, Pallav Das, Edythe M. Miller, Bruce Ogden, Benjamin O. Tayloe, Jr., and Laura Tayloe.

located within an area . . . zoned 'C-3.' " Thus, according to the Residents, the County violated its own zoning ordinance, thereby rendering the re-zoning of FBCC's property from "R-5" to "C-R" void ab initio.

In response, the County filed a motion for partial summary judgment.[4] Because the language in question appears before the regulations set forth in ACZO § 27A, the County argued that the language, as well as the entire paragraph in which it appears, is a general statement of intent or a preamble, and is therefore not a binding part of the ordinance. Alternatively, the County also asserted that, even if the language in question is binding, the eligibility requirement was satisfied because the portion of FBCC's property zoned "R-5" was "located within an area" zoned "C-3." In other words, the County did not construe the provisions of ACZO § 27A as permitting only property already zoned "C-3" to be re-zoned "C-R."

The circuit court denied the Residents' motion for summary judgment and granted the County's motion. Relying on the decision in Commonwealth v. Smith, 76 Va. (1 Hans.) 477 (1882), the circuit court reasoned that, since the

---

[3] The Church's proposed building would have a height of 96.5 feet.

[4] The Church filed a pleading opposing the Residents' motion for summary judgment.

4

first sentence in the introductory paragraph of ACZO § 27A states the purpose of the "C-R" zoning classification, the second sentence containing the language at issue "is clearly a preamble." The circuit court ruled that the entire paragraph "functions as a guide to legislative intent [and] is not an operative part of ACZO § 27A." The Residents appeal from the circuit court's judgment and assign error, among other things, to the circuit court's award of summary judgment to the County on the re-zoning issue.

ANALYSIS

The dispositive issue is whether certain language in the first paragraph of ACZO § 27A is part of a preamble or an operative component of the ordinance. That paragraph, with the language at issue emphasized, states:

> The purpose of the "C-R" classification is to encourage medium density mixed use development; to recognize existing commercial rights; and to provide tapering of heights between higher density office development and lower density residential uses. The district is designed for use in the vicinity of the metrorail stations and, to be eligible for the classification, a site shall be located within an area designated "medium density mixed use" and zoned "C-3".

(Emphasis added.) The next paragraph of ACZO § 27A provides that "[t]he following regulations shall apply to all 'C-R' Districts." The remainder of ACZO § 27A

5

lists various regulations for a "C-R" district, such as permitted uses and bulk regulations.

The cross-motions for summary judgment presented the circuit court with a question of law. "Interpretation of a statute[, in this case, an ordinance] is a pure question of law subject to de novo review by this Court." Virginia Polytechnic Inst. v. Interactive Return Serv., 271 Va. 304, 309, 626 S.E.2d 436, 438 (2006) (citing Ainslie v. Inman, 265 Va. 347, 352, 577 S.E.2d 246, 248 (2003)). In deciding the issue before us, we are guided by that standard of appellate review.

The term "preamble" is defined as "[a]n introductory statement in a constitution, statute, or other document explaining the document's basis and objective." Black's Law Dictionary 1214 (8th ed. 2004). This Court has stated "[t]he preamble to a statute is no part of it and cannot enlarge or confer powers or control the words of the act unless they are doubtful or ambiguous." Commonwealth v. Ferries Co., 120 Va. 827, 831, 92 S.E. 804, 805 (1917); accord Hooe v. Tebbs, 15 Va. (1 Munf.) 501, 510 (1810). Similarly, a "preamble is not an essential part of the act. It is often, and now, indeed, generally omitted, and is without force." Smith, 76 Va. at 484.

In Smith, the case relied on by the circuit court, we decided the legal effect of certain language in a statute's preamble. There, a taxpayer tendered to the treasurer for the City of Richmond a coupon "cut from a bond of the Commonwealth of Virginia . . . issued under the act of assembly, approved March 28, 1879." Id. at 478. The treasurer refused to accept the coupon as payment for taxes. Id. at 479. The question before the Court was whether that refusal was warranted under the terms of the act of assembly approved January 14, 1882. The enacting provisions of that 1882 act dealt only with bonds of the Commonwealth issued under the act of 1871. Id. at 480. The taxpayer, however, relied on the preamble of the 1882 act to argue that the legislature intended to include coupons "detached from bonds issued under the act of 28th of March, 1879, as well as under the act of 1871." Id. at 482. The preamble at issue in Smith stated, "by way of recital (it is not an averment), that bonds purporting to have been issued by authority of the act of March 30, 1871, and under act of March 28, 1879, are in existence without authority of law." Id. at 483.

The Court reached the following conclusion:

> The enacting clauses of the statute making provision only with regard to coupons detached from bonds of the Commonwealth, issued under the act of 1871, and making

7

no provision with regard to coupons detached from bonds issued under the act of 1879, the circumstance that the latter are mentioned in the preamble, and though the representation, by way of recital, of a state of things as inducements to the act which follows, might be applied to the latter as well as the former, the latter not being within the enacting clauses, to bring them within the purview of the act, would be to go beyond what the legislature did, and to give to the preamble the province of enlarging and extending the act of legislation beyond the purview of the statute, and of conferring powers per se, which is warranted by no decision that has ever been made, but is contrary to the settled doctrine on the subject, as declared in judicial decisions, and maintained by the most eminent sages of the law in their published works. It would be to assume legislative power by the court.

Id. at 486.

The Residents argue that the circuit court's reliance on Smith was misplaced because the circuit court ignored important distinctions between the preamble at issue there and the language in ACZO § 27A requiring "a site [to] be located within an area . . . zoned 'C-3.' "  The Residents point out that the preamble in Smith preceded an enacting clause and did not contain any mandatory language with regard to the bonds issued by authority of either the 1871 act or the 1879 act; whereas, the paragraph containing the language at issue in this case does not precede an enacting clause and does include mandatory language regarding the "C-R" classification.  The County and the Church, however, stress the fact that the first sentence of ACZO § 27A

8

states the purpose of the "C-R" classification and that the ordinance's introductory paragraph is followed by a paragraph stating, "[t]he following regulations shall apply to all 'C-R' Districts."

The Residents are correct about the distinctions between the preamble in Smith and the first paragraph of ACZO § 27A. Only the initial portion of that paragraph is akin to a preamble in that it states the purpose of the "C-R" zoning classification and explains that the classification "is designed for use in the vicinity of the metrorail stations." The analogy, however, stops there. The remainder of the first paragraph of ACZO § 27A sets out mandatory, eligibility criteria for the "C-R" classification: "a site shall be located within an area designated 'medium density mixed use' and zoned 'C-3.' "[5] See ACZO § 1(A) ("the word 'shall' is mandatory and not directory"). In clear, unambiguous language, ACZO § 27A requires that a site first be zoned "C-3" before it can be re-zoned "C-R," so it serves a gate-keeping function in the application of the ordinance.[6]

---

[5] We also note that, when the County amended and reenacted ACZO § 27A in 1990, the paragraph containing the language at issue followed an enacting clause.

[6] We find no merit to the County's alternative argument that the eligibility requirement for "C-R" classification

9

Thus, we conclude the circuit court erred in deciding that the entire first paragraph of ACZO § 27A is a preamble. The final clause of that paragraph is an operative, essential, and binding part of the ordinance.

In reaching this conclusion, we recognize that the County's action re-zoning a portion of FBCC's property from "R-5" to "C-R" constituted a legislative act. See Boggs v. Board of Supervisors, 211 Va. 488, 492, 178 S.E.2d 508, 511 (1971) ("Zoning is properly a legislative function."); Blankenship v. City of Richmond, 188 Va. 97, 104, 49 S.E.2d 321, 324 (1948) ("An ordinance that . . . regulates or restricts conduct with respect to . . . property . . . is purely legislative."). Legislative action is presumed to be reasonable; however, if the presumptive reasonableness of the action is challenged by probative evidence of unreasonableness, that challenge must be met by evidence of reasonableness, and the legislative action will be upheld if such evidence is sufficient to make the issue fairly debatable. City Council v. Wendy's of Western Virginia, 252 Va. 12, 15, 471 S.E.2d 469, 470 (1996); see also Eagle Harbor, L.L.C. v. Isle of Wight County, 271 Va. 603, 615-16, 628 S.E.2d 298, 304-05 (2006) (citing and quoting Board

---

was satisfied because the portion of FBCC's property zoned "R-5" was located in an area zoned "C-3."

of Supervisors v. Robertson, 266 Va. 525, 532-33, 587 S.E.2d 570, 575 (2003)).

Here, the County acted in direct violation of ACZO § 27A. When the County re-zoned a portion of FBCC's property from "R-5" to "C-R" without complying with the eligibility requirement set out in its own ordinance, its action was arbitrary and capricious, and not fairly debatable, thereby rendering the re-zoning void and of no effect. See Board of Supervisors v. Cities Service Oil Co., 213 Va. 359, 362, 193 S.E.2d 1, 3-4 (1972) (board of supervisors acted "arbitrarily and capriciously," rendering its action "null and void," when it re-zoned property in which a company had a vested right for a particular use); see also Hurt v. Caldwell, 222 Va. 91, 97-98, 279 S.E.2d 138, 142 (1981) (because a county building official issued a building permit in violation of a local ordinance, the permit was void and of no effect).[7]

---

[7] Although the legislative action in Hurt was carried out by a county building official, and not the local governing body itself, this Court stated in a different case that, "[i]f allowed by statute, local governing bodies may delegate the exercise of [their] legislative functions to subordinate . . . officers, or employees, but the subordinate [officer's or employee's] exercise of these functions continues to be considered a legislative action."

11

CONCLUSION

For these reasons, we conclude the circuit court erred in granting the County's motion for partial summary judgment and refusing to grant the Residents' motion for summary judgment. We will reverse the judgment of the circuit court, enter judgment here for the Residents on the re-zoning issue, and remand for further proceedings consistent with this opinion.[8]

<u>Reversed and remanded</u>.

_Helmick v. Town of Warrenton_, 254 Va. 225, 229, 492 S.E.2d 113, 115 (1997).

[8] In light of our decision, it is not necessary to address the Residents' other assignment of error.