154

## CIRCUIT COURT OF FAIRFAX COUNTY

Kesarkol Veng

v.

George Mason University

July 7, 2011

Case No. CL-2011-4712

By Judge Charles J. Maxfield

This matter came before the Court on June 24, 2011, for argument on Kesarkol Veng's Petition for Administrative Appeal of George Mason University's decision that Veng was not entitled to in-state tuition rates for the Spring 2011 semester. At the conclusion of the hearing, the matter was taken under advisement. For the following reasons, the Court reverses George Mason University's decision.

### Background

Kesarkol Veng began attending undergraduate classes at George Mason University ("GMU") in Spring 2010. Administrative Record, Tab 1. At that time, she was classified as an out-of-state student for tuition purposes. On or about August 9, 2010, Veng submitted an appeal to the university's Domicile Appeals Administration to change her classification for tuition rates to "in-state" beginning in the Spring 2011 semester. She applied as a dependent student because she receives substantial financial support from her spouse, Paul Chamnan. *Id.* Accordingly, Chamnan's domiciliary intent governs Veng's entitlement to in-state tuition, and only his actions are relevant in this case. *See* Va. Code Ann. § 23-7.4(B) (2011).

Chamnan grew up in Virginia prior to joining the Air Force. Administrative Record, Tab 1. Following completion of his military service, he worked as a civilian for the Air Force in California. Administrative

Record, Tabs 1, 7. In 2009, Chamnan accepted a job at Quantico Marine Base and moved to Manassas, Virginia, on November 15 of that year. *Id.* In an e-mail to a Human Resources Specialist at Quantico Marine Base, dated October 13, 2009, Chamnan wrote, "I am very excited and looking forward to working at Quantico as well as being close to home." Administrative Record, Tab 7.

In support of Chamnan's domiciliary intent, Veng presents the following evidence: he continuously resided in Virginia since November 15, 2009; he has worked in Virginia since November 23, 2009; he paid income tax to Virginia in 2009 and 2010; he registered to vote in Virginia in November 2009; he has owned property in Virginia since June 2008; his parents live in Virginia; and his wife has family in Virginia. Administrative Record, Tabs 1, 3, 7.

Veng acknowledges that Chamnan did not get his driver's license or register his motor vehicle until April 2010. Administrative Record, Tab 7. She claims that Chamnan did not immediately take these actions upon moving to Virginia because the vehicle took two months to ship and they preferred to have their "licenses and vehicle registration changed all at once to Virginia." *Id.* Once the vehicle arrived, Chamnan was further delayed because Chamnan and Veng could not produce a utility bill or other proof of residence in their names as they were living with Chamnan's parents. *Id.* After five trips to the DMV, they received their driver's licenses and motor vehicle registration by providing Chamnan's pay stub and Veng's enrollment documentation at GMU. *Id.*

As required by § 23-7.4:3 of the Virginia Code, GMU determines in-state tuition eligibility in a three-step process. First, GMU makes an initial determination. Upon request from the student, GMU will review the initial determination by committee at intermediate and final levels of appeal.

GMU initially denied Veng's request for in-state tuition eligibility for the Spring 2011 semester on November 16, 2010. Administrative Record, Tab 2. Veng appealed to the intermediate level. Administrative Record, Tab 3. In a January 28, 2011, letter, GMU notified Veng that she should remain classified as an out-of-state student:

> Based upon the appeal materials, you stated that you and your husband moved to Virginia on December 20, 2009. Further, a review of the factors listed in the Code of Virginia to determine your domiciliary intent show that your husband did not register his motor vehicle in Virginia or obtain a Virginia driver's license until April 2010. Virginia law requires all new residents to obtain a Virginia driver's license and register their motor vehicle within sixty days. Subsequently, you and your husband have not minimally met the one year standard imposed by the Code of Virginia.

Administrative Record, Tab 6.

Veng appealed the intermediate decision to GMU's final level of appeal. Administrative Record, Tab 7. GMU denied Veng's appeal on March 17, 2011, explaining that GMU is bound by the Domicile Guidelines promulgated by the State Council of Higher Education for Virginia:

> *In your case, we find that the objective conduct does reveal a domiciliary intent*; however, because we are required to consider the last (most recent) objective action in determining when the domiciliary intent began, we do not find that you have been domiciled in Virginia for the requisite twelve months or longer.

Administrative Record, Tab 8 (emphasis added).

GMU reasoned that, because Chamnan had a pay stub indicating his Virginia address, he had the required documentation to obtain a Virginia driver's license, but failed to do so twelve months before the Spring 2011 semester began. *Id.* As a result, Chamnan still had a California driver's license which served "to rebut his claim of domiciliary intent." *Id.*

As prescribed by § 23-7.4:3 of the Virginia Code, Veng petitioned this Court for review of GMU's final appeal decision.

*Analysis*

A. *Standard of Review*

According to the statute, this Court's "function shall be only to determine whether the decision reached by the institution could reasonably be said, on the basis of the record, not to be arbitrary, capricious, or otherwise contrary to law." Va. Code Ann. § 23-7.4:3(A) (2011). The Virginia Supreme Court defines an act as arbitrary and capricious "when it is willful and unreasonable and taken without consideration or in disregard of facts or law or without determining principle, or when the deciding body departed from the appropriate standard in making its decision." *James v. City of Falls Church*, 280 Va. 31, 42, 694 S.E.2d 568, 574 (2010) (internal citations and quotation marks omitted). *See Renkey v. County Bd. of Arlington County*, 272 Va. 369, 376, 634 S.E.2d 352, 356 (2006) (holding that a county's actions were arbitrary and capricious when it re-zoned a property without complying with its own ordinance). The court may not reweigh the evidence. *Ravindranathan v. Virginia Commonwealth Univ.*, 258 Va. 269, 274, 519 S.E.2d 618, 620 (1999).

B. *Determination of Eligibility for In-State Tuition*

To qualify for in-state tuition, a dependent student "shall establish by clear and convincing evidence that for a period of at least one year prior to the date of the alleged entitlement, the person through whom he claims eligibility was domiciled in Virginia and had abandoned any previous domicile, if such existed." Va. Code Ann. § 23-7.4(B) (2011). The Virginia Code defines domicile as the "the present, fixed home of an individual to which he returns following temporary absences and at which he intends to stay indefinitely. No individual may have more than one domicile at a time." *Id.* § 23-7.4(A). Domiciliary intent "means present intent to remain indefinitely." *Id.*

Universities must consider all of the following applicable factors: "continuous residence for at least one year prior to the date of alleged entitlement, state to which income taxes are filed or paid, driver's license, motor vehicle registration, voter registration, employment, property ownership, sources of financial support, military records, a written offer and acceptance of employment following graduation, and any other social or economic relationships with the Commonwealth and other jurisdictions." *Id.* § 23-7.4(B).

The General Assembly made the State Council of Higher Education for Virginia ("SCHEV") responsible for issuing guidelines that ensure institutions apply uniform criteria in determining eligibility for in-state tuition. *Id.* § 23-7.4:3(B). The most recent Domicile Guidelines ("Guidelines"), issued in 2009, state that "Each case presents a unique combination of factors, and the institution must determine from among them those core factors which clearly and convincingly demonstrate the person's domiciliary intent." Guidelines § 04.C. Having isolated the core factors in a given case, the institution must look at the date on which the last of these essential acts was performed. It is at that point that domiciliary intent is established, and the clock starts running for purposes of the one-year domicile requirement." *Id.* at § 04.C.1.

The Guidelines also instruct institutions to consider all applicable factors listed in the Virginia Code and "other relevant [unlisted] factors." *Id.* at § 04.E. "Necessarily, each of the objective criteria will not carry the same weight or importance in an individual case. No one factor is necessarily determinative but should be considered as part of the totality of evidence presented." *Id.* "When evidence is conflicting, the opposing facts must be balanced against each other." *Id.* at § 04.A.1.

Additionally, and of particular relevance to this case, the Guidelines address how institutions should interpret possession of a driver's license: "Possession of a Virginia driver's license may be evidence of intent to establish domicile in Virginia. . . . Possession of a driver's license from another state may be evidence of intent to retain domicile in that state." *Id.* at § 04.E.3.

158

The Supreme Court of Virginia has twice analyzed this statute. In each case, the Court upheld the university's decision that the student was not entitled to in-state tuition. *See George Mason Univ. v. Floyd*, 275 Va. 32, 39, 654 S.E.2d 556, 559 (2008); *Ravindranathan*, 258 Va. at 275, 519 S.E.2d at 620-21. Neither decision controls our inquiry as the facts in Veng's case and the universities' actions are distinguishable.

## C. *Veng's Appeal*

GMU's decision in this case violated both the SCHEV's Guidelines and Section 23-7.4 of the Virginia Code. As GMU departed from the established standard in determining Veng's domicile appeal, the decision was arbitrary and contrary to law.

First, GMU failed to isolate the core factors unique to the circumstances of this case as required by the Guidelines. As discussed above, the Guidelines require the university to isolate the "core factors which clearly and convincingly demonstrate the person's domiciliary intent." Guidelines § 04.C. Identification of the core factors is designed to give each person a review tailored to their specific circumstances and is aimed at helping the school weigh all the given factors. Here, there is no evidence in the record that GMU determined and analyzed the core factors unique to this case. Accordingly, it is uncertain if Chamnan's driver's license was in fact a core factor.

Without this requisite first step, GMU could not conduct the second step, weighing all of the applicable factors. Section 23-7.4 states that "*all* of the .... [eleven] applicable factors shall be considered. ..." The Guidelines further state that each factor "will not carry the same weight or importance in an individual case," Guidelines § 04.E, and that each factor "should be considered as part of the totality of evidence presented," *id.*, and "balanced against each other," *id.* at § 04.A.1. Contrary to these clear instructions, GMU's decisions by both the intermediate and final levels of appeal reveal a mechanical and checklist-like approach. The intermediate level of appeal letter denies in-state status because "a review of the factors listed in the Code of Virginia . . . show that [Chamnan] did not register his motor vehicle in Virginia or obtain a Virginia driver's license until April 2010." Administrative Record, Tab 6. The final level of appeal letter follows a similar logic: "As the most recent objective act in your case, the issuance of your Virginia drivers' licenses, did not occur twelve months prior to your claim of domicile, we must deny your application." Administrative Record, Tab 8. While GMU correctly included the Chamnan's driver's license as a factor, neither decision cites any other factors that GMU considered nor explains how the factors were considered in relation to each other and the "core factors." It is hard to believe that GMU would determine that Chamnan's driver's license carries substantial weight given the relevant

circumstances. At oral argument, GMU conceded that most people who move to Virginia are unaware of the law that requires residents to obtain a driver's license within sixty days. Thus, the fact that Chamnan did not obtain his license within the sixty days should not necessarily be indicative of his domiciliary intent. Nevertheless, weighing the evidence is outside the scope of this Court's authority. Thus, the essence of both letters is that, if GMU finds *any one factor* that rebuts domiciliary intent, a student is *automatically* disqualified from receiving in-state tuition rates, regardless of the weight of any other factors. This is contrary to both the Virginia Code and Guidelines, which require weighing of all the evidence presented in this specific and unique case.

Third, GMU improperly made one factor necessarily determinative. GMU's final level of appeal explained that Chamnan had domiciliary intent but that it was obligated to deny eligibility for in-state tuition because his "last objective action" (obtaining his driver's license in April 2010) did not occur twelve months prior to the beginning of the Spring 2011 semester. Their justification refers to the Guidelines, which require the institution to "look at the date on which the last of these essential acts was performed" and start the clock at that point for purposes of the one-year domicile requirement. Guidelines § 04.C.1.

At the outset, this is problematic because GMU's methodology makes the "last objective action" an "essential act," regardless of its relevance to the case or its categorization as a core factor. This means that the clock restarts each time a person acts, even if the prior actions were sufficient to show domiciliary intent twelve months prior to the beginning of the semester. What is even more troubling, however, is that, even if obtaining a driver's license was the last "essential act" to occur, the application of the Guidelines makes that act necessarily determinative: "at that point . . . domiciliary intent is established." And *when* that clock starts absolutely determines instate tuition entitlement. Thus, under that erroneous interpretation, GMU denied Veng's application because Chamnan obtained a driver's license within twelve months of the Spring 2011 semester. This is contrary to the statute's mandate that all applicable factors are considered and even the Guidelines' own requirement that "no one factor is necessarily determinative" and "opposing facts must be balanced against each other." This Court sympathizes with GMU's difficult task of sifting through the confusing and internally inconsistent Guidelines. Nevertheless, the university's ultimate obligation is to the statute. Reliance on poor drafting by SCHEV is no excuse. "An erroneous construction by those charged with its administration cannot be permitted to override the clear mandates of a statute." *Hurt v. Caldwell*, 222 Va. 91, 97, 279 S.E.2d 138, 142 (1981) (internal quotation marks omitted).

For these reasons, this Court finds GMU's decision arbitrary and contrary to law. Accordingly, the decision of the University is reversed;

Ms. Veng is to receive in-state tuition for the Spring semester of 2011. In reversing GMU's decision, this Court does not reweigh the facts but relies on GMU's finding that the "objective conduct does reveal a domiciliary intent." Administrative Record, Tab 8. Regardless of the DMV runaround, this domiciliary intent must have existed in November 2009.