PRESENT:  All the Justices

NEWBERRY STATION HOMEOWNERS
ASSOCIATION, INC., ET AL.

OPINION BY
v.  Record No. 121209      JUSTICE WILLIAM C. MIMS
April 18, 2013

BOARD OF SUPERVISORS OF
FAIRFAX COUNTY, ET AL.


FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Leslie M. Alden, Judge

In this appeal, we consider whether Code § 15.2-852(A) prohibited two members of a board of supervisors from participating in and voting on an application for a special exception.  We also consider whether the circuit court erred in finding sufficient evidence to make approval of the application fairly debatable.

I.   BACKGROUND AND MATERIAL PROCEEDINGS BELOW

In 2010, Iskalo CBR, LLC, ("Iskalo") filed an application ("the Application") for a special exception to build a Washington Metropolitan Area Transit Authority ("WMATA") bus maintenance facility on a parcel of land in Fairfax County. The parcel comprises 5.32 acres which lie in the R-1 zoning district and 12.05 acres which lie in the I-6 zoning district. After a public hearing, the planning commission approved the facility as being substantially in accord with the comprehensive plan pursuant to Code § 15.2-2232(A) and

recommended approval of the Application by the board of supervisors ("the Board").[1]

Newberry Station is a residential community situated a mile from the proposed facility and between 140 feet and a quarter-mile from the road over which the bus traffic would travel. If constructed, the facility would significantly increase vehicular traffic over the road, attributable not only to the buses but also to commuting employees traversing the road during both daylight and overnight hours. The Newberry Station Homeowners Association, Inc. ("the HOA") submitted official comments to the Board recommending that it overturn the planning commission's Code § 15.2-2232(A) approval and reject the Application.

At a February 2011 public hearing, the Board's chairman and Supervisor Cook disclosed that they had received campaign contributions from attorneys representing Iskalo. In addition, Supervisor Hudgins disclosed that she was a principal director of WMATA and Supervisor McKay disclosed that he was an alternate director of WMATA. At its March 2011 meeting, the Board approved the Application by a vote of 6 to 3. The Board's chairman abstained and the three supervisors who had made disclosures voted to approve the Application.

---

[1] The Board reserves the authority to grant special exceptions. Fairfax County Zoning Ordinance ("FCZO") § 9-001; see also Code § 15.2-2286(A)(3).

2

The HOA, Brandon Farlander, and Michael Miller (collectively, "Newberry Station") thereafter filed a complaint seeking a declaratory judgment that the Board's approval of the Application was void and an injunction barring construction of the facility.[2] They argued that Code § 15.2-852(A) required Supervisors Cook, Hudgins, and McKay to recuse themselves from the Board's consideration of the Application and that, had they recused themselves as required, the Application would have failed on a 3-3 vote. The complaint also alleged that the Board's approval of the Application was not fairly debatable.

The Board filed a demurrer arguing, among other things, that while Code § 15.2-852(A) required the disclosure made by the three supervisors, it did not require them to recuse themselves because they did not have a conflicting business or financial interest covered by the statute. The Board further argued that there was sufficient evidence to establish that its approval of the Application was fairly debatable.

The circuit court sustained the Board's demurrer only as to the applicability of Code § 15.2-852(A). Thereafter, the parties filed cross-motions for summary judgment. In its motion the Board again argued that the evidence was sufficient

---

[2] The complaint named the Board, WMATA, and Iskalo as defendants. Iskalo was subsequently dismissed from the case. The order granting the Board's motion for summary judgment dismissed the complaint as to both the Board and WMATA and therefore is final as to all remaining parties.

to establish that its approval of the Application was fairly debatable. The circuit court agreed. It therefore awarded the Board summary judgment and dismissed the complaint.

We awarded Newberry Station this appeal.

## II. ANALYSIS

### A. CONFLICTS OF INTEREST REQUIRING RECUSAL UNDER CODE § 15.2-852(A)

In its first assignment of error, Newberry Station asserts that the circuit court erred in sustaining the Board's demurrer because Supervisors Hudgins and McKay each had a conflict of interest and therefore was ineligible under Code § 15.2-852(A) to participate and vote during the Board's consideration of the Application.[3] The circuit court ruled that the supervisors did not have conflicts within the meaning of the statute. This is a question of statutory interpretation which we review de novo. Manchester Oaks Homeowners Ass'n v. Batt, 284 Va. 409, 427, 732 S.E.2d 690, 701 (2012).

---

[3] Newberry Station no longer asserts that the circuit court erred in sustaining the Board's demurrer as to Supervisor Cook. Consequently, Newberry Station's appeal now challenges only 2 votes of the 3-vote majority which approved the special exception. Nevertheless, Code § 15.2-852(A) disqualifies members with conflicts of interest from not only voting but also from "participat[ing] in any way."

Newberry Station alleged both that Supervisors Hudgins and McKay participated extensively in preliminary proceedings and that their participation tainted the Board's entire consideration of the Application. Because this issue was decided on demurrer, we must accept these allegations as true. Schilling v. Schilling, 280 Va. 146, 147, 695 S.E.2d 181, 182 (2010).

4

Code § 15.2-852(A) provides in relevant part that:

Each individual member of the board of supervisors . . . in any proceeding . . . involving an application for a special exception . . . shall, prior to any hearing on the matter or at such hearing, make a full public disclosure of any business or financial relationship which such member has, or has had within the 12-month period prior to such hearing, (i) with the applicant in such case, or (ii) with the title owner, contract purchaser or lessee of the land that is the subject of the application . . ., or (iii) if any of the foregoing is a trustee (other than a trustee under a corporate mortgage or deed of trust securing one or more issues of corporate mortgage bonds), with any trust beneficiary having an interest in such land, or (iv) with the agent, attorney or real estate broker of any of the foregoing. For the purpose of this subsection, "business or financial relationship" means any relationship (other than any ordinary customer or depositor relationship with a retail establishment, public utility or bank) such member, or any member of the member's immediate household, either directly or by way of a partnership in which any of them is a partner, employee, agent or attorney, or through a partner of any of them, or through a corporation in which any of them is an officer, director, employee, agent or attorney or holds 10 percent or more of the outstanding bonds or shares of stock of a particular class, has, or has had within the 12-month period prior to such hearing, with the applicant in the case, or with the title owner, contract purchaser or lessee of the subject land . . ., or with any of the other persons above specified.  For the purpose of this subsection "business or financial relationship" also means the receipt by the member, or by any person, firm, corporation or committee in his behalf from the applicant in the case or from the title

5

owner, contract purchaser or lessee of the subject land . . ., or from any of the other persons above specified, during the 12-month period prior to the hearing in such case, of any gift or donation having a value of more than $100, singularly or in the aggregate.

If at the time of the hearing in any such case such member has a business or financial interest with the applicant in the case or with the title owner, contract purchaser or lessee of the subject land . . ., or with any of the other persons above specified involving the relationship of employee-employer, agent-principal, or attorney-client, that member shall, prior to any hearing on the matter or at such hearing, make a full public disclosure of such relationship and shall be ineligible to vote or participate in any way in such case or in any hearing thereon.

Newberry Station argues that the statute defines "business or financial interest" as

any relationship (other than any ordinary customer or depositor relationship with a retail establishment, public utility or bank) such member . . . either directly or by way of a partnership in which any of them is a partner, employee, agent or attorney, or through a partner of any of them, or through a corporation in which any of them is an officer, director, employee, agent or attorney or holds 10 percent or more of the outstanding bonds or shares of stock of a particular class, has, or has had within the 12-month period prior to such hearing, with the applicant in the case, or with the title owner, contract purchaser or lessee of the subject land . . . . .

By contrast, the Board argues that this language defines a "business or financial <u>relationship</u>" and does not pertain to a

6

"business or financial interest."  According to the Board, the General Assembly used two distinct terms in the statute and Newberry Station incorrectly uses them interchangeably.  The definition of "business or financial interest," the Board continues, is defined in the second paragraph of Code § 15.2-852(A) as an interest "involving the relationship of employee-employer, agent-principal, or attorney-client."  Therefore, the Board concludes, the statute recognizes two distinct classes of conflict and imposes different obligations on members for each class:  a member who has any qualifying "business or financial relationship" at the time of the hearing, or who has had such a relationship at any time within the 12 months preceding the hearing, must "make a full public disclosure" of the relationship; however, any member who has "a business or financial interest" at the time of the hearing not only must "make a full public disclosure of such relationship" but also "shall be ineligible to vote or participate in any way in such case or in any hearing thereon."  Code § 15.2-852(A) (emphasis added).

Newberry Station responds that the Board's interpretation is incorrect.  It argues that the phrase "involving the relationship of employee-employer, agent-principal, or attorney-client" modifies only the phrase "any of the other persons above specified."  Thus, according to Newberry Station,

7

the second paragraph merely prohibits a business or financial interest with (1) the applicant, (2) the title owner, (3) the contract purchaser, (4) the lessee, or (5) "any of the other persons above specified involving the relationship of employee-employer, agent-principal, or attorney-client."  It therefore does not, Newberry Station concludes, provide any independent definition of "business or financial interest."

It is well-settled that "we determine the General Assembly's intent from the words contained in the statute." Alger v. Commonwealth, 267 Va. 255, 259, 590 S.E.2d 563, 565 (2004).  Accordingly, "[w]hen a statute is unambiguous, we must apply the plain meaning of that language."  Appalachian Power Co. v. State Corp. Comm'n, 284 Va. 695, 706, 733 S.E.2d 250, 256 (2012).  "[W]hen the language of an enactment is free from ambiguity, resort to legislative history and extrinsic facts is not permitted because we take the words as written to determine their meaning."  Brown v. Lukhard, 229 Va. 316, 321, 330 S.E.2d 84, 87 (1985).

However, a statute is ambiguous when its language is "capable of more senses than one, difficult to comprehend or distinguish, of doubtful import, of doubtful or uncertain nature, of doubtful purport, open to various interpretations, or wanting clearness of definiteness," particularly where its words "have either no definite sense or else a double one."

<u>Ayres v. Harleysville Mut. Casualty Co.</u>, 172 Va. 383, 393, 2 S.E.2d 303, 307 (1939).  We determine that the arguments advanced by both sides have some element of merit and that the phrase "business or financial interest" is undefined and ambiguous in light of its placement following the defined term "business or financial relationship."  We therefore will consider the meaning of the statute in light of the canons of construction and its legislative history.

We begin by evaluating the Board's argument that the statute defines "business or financial interest" as one "involving the relationship of employee-employer, agent-principal, or attorney-client."  The relevant portion of the second paragraph of Code § 15.2-852(A) provides that

> [i]f at the time of the hearing in any such case such member has a business or financial interest with the applicant in the case or with the title owner, contract purchaser or lessee of the subject land . . ., or with any of the other persons above specified involving the relationship of employee-employer, agent-principal, or attorney-client, that member shall, prior to any hearing on the matter or at such hearing, make a full public disclosure of such relationship and shall be ineligible to vote or participate in any way in such case or in any hearing thereon.

The question essentially is whether the phrase "involving the relationship of employee-employer, agent-principal, or attorney-client" modifies the noun "persons" in "any of the other persons above specified" or the noun "interest" in

9

"business or financial interest."  The Board adopts the first
of these possible constructions.  Under this argument, the
phrase "involving the relationship of employee-employer, agent-
principal, or attorney-client" applies to each of the preceding
entities: the applicant, the title owner, the contract
purchaser, the lessee, or any of the other persons listed in
the first paragraph of the subdivision.  That construction
contravenes the rule of the last antecedent.

Under that rule, "[r]eferential and qualifying words and
phrases, where no contrary intention appears, refer solely to
the last antecedent.  The last antecedent is 'the last word,
phrase, or clause that can be made an antecedent without
impairing the meaning of the sentence.'"  Alger, 267 Va. at
259, 590 S.E.2d at 565-66 (quoting 2A Norman J. Singer,
Sutherland on Statutory Construction § 47.33 (6th rev. ed.
2000)).  Applying the rule to the operative sentence here, the
phrase "involving the relationship of employee-employer, agent-
principal, or attorney-client" modifies only the immediately
preceding antecedent:  "any of the other persons above
specified."  The phrase does not apply to the applicant, the
title owner, the contract purchaser, or the lessee.[4]  It

--------------------

[4] In Alger, we also noted the preferred procedure for
clarifying whether modifying language is intended to modify all
preceding antecedents or only the final one.  267 Va. at 260 &
n.3, 590 S.E.2d at 566 & n.3.  The General Assembly is presumed
to be aware of that decision, see Barson v. Commonwealth, 284

10

similarly does not modify "business or financial interest,"

thereby defining that phrase to be distinct from "business or

financial relationship."[5]  We now turn to Newberry Station's

argument.

We have repeatedly said that, "[w]hen interpreting and

applying a statute, we 'assume that the General Assembly chose,

Va. 67, 74, 726 S.E.2d 292, 296 (2012), and it has made no
corresponding amendment to Code § 15.2-852(A).

[5] Only two words separate the phrase "involving the
relationship of employee-employer, agent-principal, or
attorney-client" from "persons" in "any of the other persons
above specified."  By comparison, 53 words separate it from
"interest" in the phrase "business or financial interest."  Had
the General Assembly intended the phrase "involving the
relationship of employee-employer, agent-principal, or
attorney-client" to modify "interest," it would have written
the prohibition to apply when a "member has a business or
financial interest involving the relationship of employee-
employer, agent-principal, or attorney-client with the
applicant," and so forth.  It did not.
    Similarly, we are not persuaded that the phrase "any of
the other persons above specified" is legislative shorthand
intending simply to bring the entities identified by clauses
(iii) and (iv) of the first paragraph within the reach of the
second paragraph.  The second paragraph explicitly recites in
full the entities identified by clauses (i) and (ii) of the
first paragraph.  "[I]t is a 'settled principle of statutory
construction that every part of a statute is presumed to have
some effect and no part will be considered meaningless unless
absolutely necessary.'"  Brown v. Commonwealth, 284 Va. 538,
544, 733 S.E.2d 638, 641 (2012).  We therefore must conclude
that the General Assembly acted deliberately when it treated
the clause (i) and (ii) entities differently compared to the
clause (iii) and (iv) entities.  If it intended only to resort
to legislative shorthand, the General Assembly would have
abbreviated the second paragraph considerably by writing the
prohibition to apply when a "member has a business or financial
interest involving the relationship of employee-employer,
agent-principal, or attorney-client with any entity identified
in clauses (i) through (iv) above."  Again, it did not.

11

with care, the words it used in enacting the statute, and we are bound by those words.'" Kiser v. A.W. Chesterton Co., 285 Va. 12, 19 n.2, 736 S.E.2d 910, 915 n.2 (2013) (quoting Halifax Corp. v. First Union Nat'l Bank, 262 Va. 91, 100, 546 S.E.2d 696, 702 (2001)); accord Rives v. Commonwealth, 284 Va. 1, 3, 726 S.E.2d 248, 250 (2012). Therefore, "'when the General Assembly has used specific language in one instance, but omits that language or uses different language when addressing a similar subject elsewhere in the Code, we must presume that the difference in the choice of language was intentional.'" Id. (quoting Zinone v. Lee's Crossing Homeowners Ass'n, 282 Va. 330, 337, 714 S.E.2d 922, 925 (2011)).

Applying these principles to this case could lead to the conclusion that the General Assembly deliberately chose the phrase "business or financial relationship" in the first paragraph of Code § 15.2-852(A) and "business or financial interest" in the second paragraph intending the two phrases to have different meanings. However, the legislative history of this specific statute reveals a contrary purpose.

When the statute originally was enacted and codified as former Code § 15.1-73.4, and for nearly thirty years thereafter, the phrase "business or financial interest" was followed by the phrase "as above defined," indicating that the General Assembly intended that phrase to have the meaning set

12

forth in preceding language.  1968 Acts ch. 774; accord 1970

Acts ch. 654; 1988 Acts ch. 879.  Yet no definition of

"business or financial interest" was provided there; the only

definition set forth was the one provided for a "business and

financial relationship."  Id.  This supports an interpretation

that the legislature at that time intended the terms "business

or financial relationship" and "business or financial interest"

to be synonymous.

However, the General Assembly subsequently struck the

phrase "as above defined" from the statute when it was

recodified as Code § 15.2-852.  1997 Acts ch. 587.  The Board

argues this amendment reflects legislative intent that the two

phrases thenceforth would have two distinct meanings.  We

disagree.

As an enactment to recodify an existing title of the Code

of Virginia, the underlying legislation was prepared by the

Virginia Code Commission ("the Commission") at the direction of

the General Assembly, Senate J. Res. 2, 1994 Acts, at 2600, and

it was accompanied by a drafting report.  Senate Doc. No. 5,

Virginia Code Commission, Report on the Recodification of Title

15.1 of the Code of Virginia at 173-74 (1997).  The drafting

report proposed the elimination of "as above defined" after the

phrase "business or financial interest."  Id. at 174.  The

13

drafting note for this amendment also states that the proposal was not intended to effect a substantive change.  Id.

The Commission's report on the recodification is the impetus of the underlying legislation at issue here.[6]  The General Assembly expressly instructed the Commission "to study Title 15.1" and report back a revision of the title.  Senate J. Res. 2, 1994 Acts, at 2600.  The General Assembly then enacted into law the proposals contained in the report with few amendments, and no amendments at all to the recommended language of the provision that is now codified as Code § 15.2-852(A).  We therefore accept the report's drafting note as persuasive authority that the General Assembly did not intend to effectuate a substantive change to the definition of "financial or business interest" with the 1997 recodification.

As previously noted, from the time of its original enactment in 1968 to the 1997 recodification the operative language of the second paragraph began, "[i]f at the time of the hearing . . . a member . . . has a business or financial

---

[6] It has been noted that neither the single voice of one contemporaneous legislator nor a chorus of voices from a subsequent session composed of later-elected legislators may authoritatively state the legislature's intent in enacting legislation.  Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc., 447 U.S. 102, 117-18 (1980).  But the Commission report is neither of these and, as Chief Justice John Marshall noted, "'[w]here the mind labours to discover the design of the legislature, it seizes every thing from which aid can be derived.'"  Id. at 118 n.13 (quoting United States v. Fisher, 6 U.S. 358, 386 (1805)).

14

interest, <u>as above defined</u> . . . ." Former Code § 15.1-73.4

(emphasis added). However, the phrase "business or financial

interest" was not defined in the preceding language; only the

phrase "business or financial relationship" was defined. We

therefore conclude that the phrase "business or financial

interest" was intended to have the same meaning as "business or

financial relationship." Separating the meaning of "business

or financial interest" as used in the second paragraph from

"business or financial relationship" as used in the first

paragraph would have effectuated a substantive change. That

expressly was not the intention of the Commission in proposing

the amendment and there is no evidence that the General

Assembly enacted the proposal with a different intent.

Accordingly, "business and financial interest" has the

same meaning as "business and financial relationship." As

defined in the statute, "business or financial relationship"

means, in relevant part,[7]

> any relationship (other than any ordinary
> customer or depositor relationship with a
> retail establishment, public utility or
> bank) such member . . . either directly or
> by way of a partnership in which any of
> them is a partner, employee, agent or
> attorney, or through a partner of any of
> them, or through a corporation in which any

_____

[7] Newberry Station does not contend that Supervisors
Hudgins or McKay received any gift or donation exceeding $100
in value. The definition of "business or financial
relationship" encompassing such gifts or donations therefore is
not relevant here.

15

> of them is an officer, director, employee, agent or attorney or holds 10 percent or more of the outstanding bonds or shares of stock of a particular class, has, or has had within the 12-month period prior to such hearing, with the applicant in the case, or with the title owner, contract purchaser or lessee of the subject land . . . .

Code § 15.2-852(A).  Although this is the definition Newberry Station favors, our analysis is not concluded.  Rather, we must determine whether Supervisors Hudgins and McKay had such a relationship.

Newberry Station argues that such a relationship existed because (a) WMATA was the contract purchaser of the land subject to the Application and (b) WMATA is a corporation and Supervisors Hudgins and McKay were members of its board of directors.  Although it does not dispute that WMATA was the contract purchaser, the Board responds that WMATA is a governmental agency, not a private corporation, and therefore is not a corporation within the meaning of Code § 15.2-852(A).  Having recently addressed a similar issue, we agree with the Board.

WMATA is a government agency created in corporate form by interstate compact between Virginia, Maryland, and the District of Columbia.  The Washington Metropolitan Area Transit Regulation Compact of 1966, as amended by 2009 Acts chs. 771 and 828 ("the Compact") states:

16

> There is hereby created, <u>as an</u>
> <u>instrumentality and agency of each of the</u>
> <u>Signatory parties hereto</u>, the Washington
> Metropolitan Area Transit Authority <u>which</u>
> <u>shall be a body corporate and politic</u>, and
> which shall have the powers and duties
> granted herein and such additional powers
> as may hereafter be conferred upon it
> pursuant to law.

(Emphasis added.)  The words "body corporate and politic"

create a corporation.  See <u>Dunningtons v. President & Dir. N.</u>

<u>W. Turnpike Road</u>, 47 Va. (6 Gratt.) 160, 170 (1849); <u>Chapline</u>

<u>v. Overseers of the Poor</u>, 34 Va. (7 Leigh) 231, 233 (1836).

However, WMATA is also "an instrumentality and agency of" the

Commonwealth.  See <u>Short Pump Town Ctr. Cmty. Dev. Auth. v.</u>

<u>Hahn</u>, 262 Va. 733, 742 & n.10, 554 S.E.2d 441, 445 & n.10

(2001) (language creating a "public body corporate and politic"

or creating a "body corporate and politic" and a "political

subdivision" creates a governmental agency).

In <u>Cuccinelli v. Rector & Visitors of the University of</u>

<u>Virginia</u>, 283 Va. 420, 722 S.E.2d 626 (2012), we were called

upon to determine whether the University of Virginia, which

like WMATA is a governmental agency in corporate form,[8] was a

"person" for the purposes of the Virginia Fraud Against

Taxpayers Act, Code § 8.01-216.1 <u>et</u> <u>seq.</u>  We noted that a

---

[8] The university is a corporation by operation of statute. Code § 23-69.  Nevertheless, it is also an agency of the Commonwealth.  <u>Rector & Visitors of the Univ. of Va. v. Carter</u>, 267 Va. 242, 245, 591 S.E.2d 76, 78 (2004) (citing <u>James v. Jane</u>, 221 Va. 43, 51, 282 S.E.2d 864, 868 (1980)).

17

"corporation" was included in the definition of "person" provided in Code § 8.01-216.2 for that Act. 283 Va. at 426, 722 S.E.2d at 630. However, we also noted that the term "corporation" appeared alongside the terms "firm, association, organization, partnership, limited liability company, business or trust." Id. Applying the canon of noscitur a sociis,[9] we concluded that the term "'corporation' should be understood as a similarly oriented private sector entity, and not as encompassing an agency of the Commonwealth." Id. at 432, 722 S.E.2d at 633.

In applying the canon to Code § 15.2-852(A), the related words and phrases from which the precise meaning of "corporation" should be ascertained are "retail establishment," "public utility," "bank," and "partnership." These words accompanying "corporation" in Code § 15.2-852(A) relate to entities oriented to financial gain just as the words accompanying "corporation" do in Code § 8.01-216.2. As used in Code § 15.2-852(A), the words illustrate that in enacting the

---

[9] Under the canon of noscitur a sociis, the precise meaning intended by the legislature of a word susceptible to multiple meanings is ascertained "by reference to [its] association with related words and phrases" in the statute. Cuccinelli, 283 Va. at 432, 722 S.E.2d at 633 (quoting Andrews v. Ring, 266 Va. 311, 319, 585 S.E.2d 780, 784 (2003)). Where general words and specific words occur together, "the general words are limited and qualified by the specific words and will be construed to embrace only objects similar in nature to those objects identified by the specific words." Id. (quoting Andrews, 266 Va. at 319, 585 S.E.2d at 784).

18

statute the General Assembly intended to prevent members of the Board from acting on public business from which they may receive a financial benefit, either directly or through a household member. Because WMATA is a governmental agency organized in corporate form, it affords no opportunity for financial benefit to its unpaid directors.[10] It therefore is not a "corporation" within the meaning of the statute.

Accordingly, the circuit court did not err in sustaining the Board's demurrer. We therefore will affirm this portion of its judgment.

### B. SUFFICIENCY OF THE EVIDENCE

In its second assignment of error, Newberry Station asserts that the circuit court erred by awarding the Board summary judgment upon a finding that the Board's approval of the Application was fairly debatable.

Approval of a special exception is a legislative act. Sinclair v. New Cingular Wireless PCS, LLC, 283 Va. 567, 581, 727 S.E.2d 40, 47 (2012) (citing Fairfax County Board of Supervisors v. Southland Corp., 224 Va. 514, 522, 297 S.E.2d 718, 722 (1982)). It therefore is entitled to a presumption of validity. Town of Leesburg v. Giordano, 280 Va. 597, 606, 701 S.E.2d 783, 787 (2010).

---

[10] The Compact expressly provides that "[m]embers of the Board and alternates shall serve without compensation but may be reimbursed for necessary expenses incurred as an incident to the performances of their duties."

19

This presumption of validity is a presumption of reasonableness. Legislative action is reasonable if the matter at issue is fairly debatable. An issue is fairly debatable when the evidence offered in support of the opposing views would lead objective and reasonable persons to reach different conclusions. Under the fairly debatable standard, the governing body is not required to go forward with evidence sufficient to persuade the fact-finder of reasonableness by a preponderance of the evidence.

[Rather, w]here presumptive reasonableness is challenged by probative evidence of unreasonableness, the challenge must be met by some evidence of reasonableness. If evidence of reasonableness is sufficient to make the question fairly debatable, the legislative action must be sustained. If not, the evidence of unreasonableness defeats the presumption of reasonableness and the legislative action cannot be sustained.

Id., 701 S.E.2d at 787-88 (internal citations, quotation marks, and alterations omitted). Nevertheless, when a legislative act is undertaken in violation of an existing ordinance, the board's "action [i]s arbitrary and capricious, and not fairly debatable, thereby rendering the [legislative act] void and of no effect." Renkey v. County Bd. of Arlington County, 272 Va. 369, 376, 634 S.E.2d 352, 356 (2006).

Newberry Station first argues that the Board's action was arbitrary and capricious, and therefore void, under the Renkey standard because the Application was approved in violation of FCZO §§ 9-006(6), 9-011, and 9-404(4). However, unlike the

20

ordinance at issue in Renkey, the cited provisions do not restrict the authority of the Board to act.

In Renkey, we considered a provision in the Arlington County Zoning Ordinance ("ACZO"). That provision permitted the board of supervisors to rezone land into a "C-R" class designation. The ordinance provided that "to be eligible for the classification, a site shall be located within an area designated 'medium density mixed use' and zoned 'C-3'." 272 Va. at 373, 634 S.E.2d at 354 (quoting ACZO § 27A). A landowner applied to have its parcel rezoned into the "C-R" class designation and the board of supervisors approved the application. However, only a portion of the subject parcel was previously zoned in the "C-3" class designation. Id. at 371, 634 S.E.2d at 353.

Renkey challenged the board's approval in an action for declaratory judgment and injunctive relief, arguing that the board's action was invalid because the non-"C-3" portion of the parcel was ineligible to be rezoned into the "C-R" class designation under the ordinance. Id. at 371-72, 634 S.E.2d at 354. We agreed with Renkey, concluding that the board lacked authority under the ordinance to rezone the non-"C-3" portion of the parcel into the "C-R" class designation. That portion of the parcel was, by the terms of the ordinance, ineligible to be so rezoned. Accordingly, the board's "action was arbitrary

and capricious, and not fairly debatable, thereby rendering the re-zoning void and of no effect." Id. at 376, 634 S.E.2d at 356.

While ACZO § 27A restricted the authority of the board of supervisors to rezone the parcel in Renkey, the ordinance provisions implicated in this case do not restrict the Board's general authority to grant special exceptions. Rather, they at most articulate the standards by which the Board's consideration of a special exception application is to be guided. While a zoning ordinance must set forth standards under which applications for special exceptions are to be considered when local governing bodies delegate that legislative power, the ordinance need not do so when the local governing body has reserved the power unto itself. Jennings v. Board of Supervisors, 281 Va. 511, 520, 708 S.E.2d 841, 846 (2011) (comparing Bollinger v. Board of Supervisors, 217 Va. 185, 187, 227 S.E.2d 682, 683 (1976) with Ames v. Town of Painter, 239 Va. 343, 349, 389 S.E.2d 702, 705 (1990)).

Even when the local governing body delegates the power to approve or deny a special exception, whereupon standards must be articulated in the zoning ordinance, id., the judicial inquiry is limited to the question of whether the "officials, agencies, and boards exercising delegated legislative powers . . . ha[ve] acted in accordance with the policies and standards

22

specified in the legislative delegation of power." Ames, 239 Va. at 349, 389 S.E.2d at 705. That review is subject to the presumption of validity recited above. Id. at 347-48, 389 S.E.2d at 704; accord Town of Leesburg, 280 Va. at 606, 701 S.E.2d at 787-88. Accordingly, while a local governing body acts arbitrarily and capriciously when it acts outside the scope of the authority conferred by the zoning ordinance, and the resulting action is void, Renkey, 272 Va. at 376, 634 S.E.2d at 356, we apply the presumption of validity when we review whether the local governing body adequately considered the standards set forth in the zoning ordinance when it approved or denied a special exception application.

Newberry Station also argues that the Board's approval of the Application is not entitled to a presumption of validity because it is not fairly debatable. For Newberry Station to prevail on this argument, the record must establish that it met its burden to adduce evidence of unreasonableness sufficient to rebut the presumption of reasonableness and that the Board failed to meet Newberry Station's evidence with some evidence of reasonableness. Town of Leesburg, 280 Va. at 606, 701 S.E.2d at 788.

Newberry Station specifically argues that the Board's approval of the Application was unreasonable because the Board relied on a staff report that evaluated the Application without

23

considering standards applicable under the ordinance.  Newberry Station's concerns are particularly directed to three standards, those set forth for open space, noise, and hazardous and toxic substances.  We will consider each argument in turn.

Newberry Station first challenges the Board's approval on the basis of open space requirements.  FCZO § 9-006 requires the Board to consider certain general standards for all special exception applications.  Among these is whether "[o]pen space [is] provided in an amount equivalent to that specified for the zoning district in which the proposed use is located."  FCZO § 9-006(6).  FCZO § 5-608, applicable to the portion of the parcel lying in the I-6 zoning district, requires 10% of the gross area to be landscaped open space.

Newberry Station contends the Board failed to consider this standard because the staff report did not assess the amount of open space reserved on the portion of the parcel lying in the I-6 zoning district.  The Board responds that the report contains sufficient evidence that the open space requirement would be met.  We agree with the Board.

The report includes a plat of the portion of the parcel in the I-6 zoning district.  Newberry Station concedes that the portion of the parcel in the I-6 district has an area of 12.05 acres.  The Court may take judicial notice that an acre consists of 43,560 square feet.  See Shackleford v.

24

Commonwealth, 262 Va. 196, 210-11, 547 S.E.2d 899, 907 (2001) (holding "the circuit court did not err in taking judicial notice of the conversion ratio" between standard units of measurement). Therefore, the portion of the parcel in the I-6 district is 524,898 square feet.

Measuring the entire developed area of the parcel lying within the I-6 zoning district, including the facility, its parking lots, and other structures, as shown on that plat and according to its scale of measure, the area is less than 470,000 square feet, leaving more than 54,898 square feet undeveloped. This exceeds the 10% open space requirement by more than 2400 square feet.

Newberry Station next challenges the Board's approval on the basis of noise limits. FCZO § 9-404(4) requires that "[a]ll [transportation] facilities shall be so located and so designed that the operation thereof will not seriously affect adjacent residential areas, particularly with respect to noise levels."

Newberry Station contends the noise study used by the Board in its consideration predicted the noise levels would be 55.3 decibels if the facility were approved. Under Fairfax County Code § 108-4-4(a), Newberry Station continues, noise levels in residential areas from stationary sources may not

exceed 55 decibels.  The Board responds that Newberry Station

has relied on an inapplicable section of the noise ordinance.

The noise study evaluated noise levels at Hunter Estates,

a residential community adjoining the parcel subject to the

Application.  By its own admission, Newberry Station is farther

away from the proposed facility than Hunter Estates.

Consequently, the study is not probative of the noise levels

which may affect Newberry Station.  While Newberry Station also

argues that the buses traveling to and from the facility would

generate excessive noise, and that Newberry Station is closer

to the road than Hunter Estates, the limits set by the noise

ordinance for vehicular traffic range from 76 to 90 decibels,

depending on the size of the vehicle and the applicable speed

limit.  Fairfax County Code § 108-4-5(a).  Newberry Station has

adduced no evidence that the noise from bus traffic would

exceed these levels.[11]

More importantly, FCZO § 9-404(4) merely requires the

Board to consider the effect of noise in residential areas.  It

does not incorporate the noise ordinance and the noise

ordinance does not provide for its enforcement through the

_____

[11] On brief, Newberry Station avers that it would have
provided additional evidence in the form of expert testimony.
However, no assignment of error asserts that the circuit court
erred in awarding summary judgment because material facts were
in dispute or that the court improperly excluded admissible
evidence.  The averment therefore has no relevance to this
appeal.  See Rule 5:17(c)(1)(i); Rule 5:27(d).

26

zoning ordinance. To the contrary, the noise ordinance expressly provides for its enforcement as a misdemeanor punishable by not more than 30 days' imprisonment or a fine of not more than $1000. Fairfax County Code § 108-1-3.

Newberry Station finally challenges the Board's approval on the basis of hazardous and toxic substances. FCZO § 9-011(7)(H) requires all special exception applications to include "[a] listing, if known, of all hazardous or toxic substances as set forth in Title 40, Code of Federal Regulations Parts 116.4, 302.4 and 355 . . . to be generated, utilized, stored, treated, and/or disposed of on site and the size and contents of any existing or proposed storage tanks or containers."

Newberry Station contends the application included no such listing of substances. Rather, it continues, the Application merely included plats displaying storage tanks for certain substances and an additional "hazmat container" with no indication of what it would contain. Newberry Station also contends that WMATA uses ethylene glycol, a substance listed in 40 C.F.R. § 302.4, at all its facilities and that ethylene glycol is not identified in the Application. The Board responds that the designation of the various containers on the plats is sufficient because hazardous and toxic substances are

27

regulated during the site-plan review process, not the special exception approval process.

Unlike FCZO §§ 9-006(6) and 9-404(4), FCZO § 9-011 does not set forth standards for the Board's consideration of a special exception application. Rather, by its own terms FCZO § 9-011 governs the information required to be submitted by the applicant. The section is captioned "Submission Requirements" and it begins "[a]ll applications for special exception uses shall be accompanied by the following items . . . ." FCZO § 9-011.

While it might be possible in a hypothetical case that an applicant's failure to submit an application that fulfills a requirement imposed by the zoning ordinance would prevent a local governing body or delegated authority from considering one or more of the standards set forth in the ordinance, that is not the case here. Newberry Station has not identified any provision of the FCZO that establishes standards for the Board to consider with respect to hazardous or toxic substances. There is no standard, for example, obligating the Board to consider the types or quantities of such materials, or regulating the production, use, storage, treatment, or disposal of such materials, even if identified by the applicant. Cf. FCZO § 9-011(7)(H). Therefore, an applicant's failure to

identify the materials does not impede, obstruct, or adversely affect the Board's consideration of any such standard.

Accordingly, the record contains sufficient evidence of reasonableness to make the Board's approval of the Application fairly debatable. To the extent Newberry Station adduced evidence of unreasonableness, the Board met the challenge "by some evidence of reasonableness," and its decision "must be sustained." Town of Leesburg, 280 Va. at 606, 701 S.E.2d at 788. The circuit court therefore did not err in awarding the Board summary judgment and we will affirm that portion of its judgment.

### III. CONCLUSION

For the foregoing reasons, we will affirm the judgment of the circuit court.

<u>Affirmed.</u>

JUSTICE McCLANAHAN, concurring.

I agree with the majority's analysis and conclusion as to the sufficiency of the evidence issue. Also, I agree with the majority's conclusion that Supervisors Hudgins and McKay did not have conflicts within the meaning of Code § 15.2-852(A). I write separately, however, because I believe the Board of Supervisors of Fairfax County (the "Board") reads subsection A of the statute correctly, which is much more limited in scope than the majority's construction.

29

The second paragraph of Code § 15.2-852(A) sets forth, in concise terms, the circumstances requiring a Board member's recusal. This Court may not, "under the guise of statutory construction," read into this provision words not used and meaning not readily derived from its language. Lahey v. Johnson, 283 Va. 225, 230, 720 S.E.2d 534, 537 (2012). "'When the legislature has spoken plainly it is not the function of courts to change or amend its enactments under the guise of construing them. The province of [statutory] construction lies wholly within the domain of ambiguity, and that which is plain needs no interpretation.'" Id. (quoting Doss v. Jamco, Inc., 254 Va. 362, 370, 492 S.E.2d 441, 445 (1997)).

Furthermore, to the extent there is any doubt as to the meaning of Code § 15.2-852(A), the fact that there is a penal aspect to this provision must be considered. Subsection C of Code § 15.2-852 states that "[a]ny person knowingly and willfully violating the provisions of this section shall be guilty of a Class 1 misdemeanor." Therefore, any construction of the statute must "limit its application to cases falling clearly within its scope." Robinson v. Commonwealth, 274 Va. 45, 51, 645 S.E.2d 470, 473 (2007)(citing Farrakhan v. Commonwealth, 273 Va. 177, 181, 639 S.E.2d 227, 230 (2007); Turner v. Commonwealth, 226 Va. 456, 459, 309 S.E.2d 337, 338 (1983)).

Guided by these principles, I believe paragraph two of Code § 15.2-852(A) should be read to mean, as it plainly states, that if a member of a board of supervisors has a "business or financial interest" with any of the named individuals, which specifically "involv[es] the relationship of employee-employer, agent-principal, or attorney-client," then the board member must disclose "such relationship" and decline to participate in the hearing.

Contrary to the majority, I do not read the operative limiting language of "relationship of employee-employer, agent-principal, or attorney-client," to apply only to the phrase "any of the other persons above specified." Code § 15.2-852(A). That phrase is simply a shorthand identifier of the individuals listed in subparts (iii) and (iv) of the first sentence of subsection A, who are in the same class as the other individuals listed in paragraph two. It is apparent that the legislature would use such shorthand phraseology in subsection B because it used this same shorthand twice in subsection A (in the second and third sentences).

Nor do I agree that the definition of "business or financial relationship" in the first paragraph of the statute (in describing the circumstances when a board member need only make a disclosure) can be imported to paragraph two by substituting the term "business or financial relationship" for

31

"business or financial interest."  The legislature plainly used different terms in each paragraph.  With the former, the legislature identified a wide range of "relationships" that a board member would be required to disclose.  With the latter, the legislature identified a much more limited range of "interests" requiring recusal of the board member by limiting such "interests" to those "involving the relationship of employee-employer, agent-principal, or attorney-client."

Accordingly, I believe we are bound by the language as plainly stated in the second paragraph of Code § 15.2-852(A) and may look no further to determine its meaning.  See Doss, 254 Va. at 370, 492 S.E.2d at 446 ("In the absence of ambiguity, a court may look only to the words of the statute to determine its meaning, and when the meaning is plain, resort to rules of construction, legislative history, and extrinsic evidence is impermissible." (citing Harrison & Bates, Inc. v. Featherstone Assocs. Ltd. P'ship, 253 Va. 364, 368, 484 S.E.2d 883, 885 (1997); Virginia Dept. of Labor v. Westmoreland Coal Co., 233 Va. 97, 99, 353 S.E.2d 758, 760 (1987); Brown v. Lukhard, 229 Va. 316, 321, 330 S.E.2d 84, 87 (1985)).  I thus conclude that, because the positions Supervisors Hudgins and McKay had with the WMATA Board of Directors did not involve the relationship of employee-employer, agent-principal, or attorney-client, they were not required under Code § 15.2-

852(A) to recuse themselves from voting on the subject application for a special exception.

For these reasons, I concur.