# COURT OF APPEALS OF VIRGINIA

## Record No. 0535-25-4

JOE MILLER, d/b/a VILLAGE BODY & PAINT SHOP
v.
PROGRESSIVE GULF INSURANCE COMPANY

Present: Judges Lorish, Callins and White
Argued at Alexandria, Virginia

Opinion Issued June 2, 2026[*]

## FROM THE CIRCUIT COURT OF FAUQUIER COUNTY
Douglas L. Fleming, Jr., Judge

Rachel L. Yates (Yates Appellate Law, on briefs), for appellant.

Wm. Tyler Shands (Kerrigan O'Malley; Carter & Shands, PC, on brief), for appellee.

## MEMORANDUM OPINION BY
## <u>JUDGE LISA M. LORISH</u>

Joe Miller, owner of Village Body & Paint Shop, sued Progressive Gulf Insurance Company to recover storage fees for a vehicle that was left in the parking lot of Miller's small automobile repair business for nearly a year. Miller argues that the circuit court erred by granting partial summary judgment to Progressive after concluding Miller alleged an unjust enrichment claim, not a quantum meruit claim, and that the damages in the case were limited to the salvage value of the vehicle. Because Miller alleged facts to support a quantum meruit claim, and facts material to that claim remain in dispute, we vacate the judgment and remand the case for further proceedings.

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

BACKGROUND

The undisputed facts relevant to the summary judgment motion follow.[1]  On June 19, 2023, Meredith Blair Bearov brought her car to Miller's shop for a repair estimate after an accident.  Her car was insured by Progressive.  Miller estimated that the cost of repairs would be approximately $16,300.

On July 6, 2023, a Progressive representative visited Miller's shop to inspect the car.  The representative was unable to open the hood of the car because neither he nor Miller had a key to it.  Progressive then prepared an estimate and sent it to Miller on July 24, 2023.  Progressive estimated the repair costs at approximately $5,000.

Miller then suggested that Progressive needed to reinspect the car and adjust its estimate because its representative had performed the first inspection without opening the hood.  Sometime in late August, Progressive sent another representative to inspect the car, after which Progressive declared the car a total loss.  Progressive paid Bearov for the value of her car, and Bearov sent Progressive the car's title.

A dispute then arose between Progressive and Miller over storage fees.  Progressive contacted Miller on September 19, 2023 to learn how much it owed Miller in storage fees for the time the car had been in his lot.  Miller informed Progressive the cost was $120 per day.  Rather than pay that amount, Progressive offered to transfer Miller title to the car in settlement of the storage fees.  Miller refused.  Progressive never picked up the car.

---

[1] A grant of summary judgment must be based upon undisputed facts established by "the pleadings, the orders . . . made at a pretrial conference, [or] the admissions . . . in the proceedings."  Rule 3:20; *see Corriveau v. State Farm Mut. Auto. Ins. Co.*, 298 Va. 273, 278 (2019).  The circuit court may also "consider the stipulations of the parties, answers to interrogatories and deposition testimony if the parties agree." *Andrews v. Ring*, 266 Va. 311, 318 n.2 (2003).  Complaints and answers, of course, are pleadings. *See Baylor v. Commonwealth*, 190 Va. 116, 121 (1949).  "All motions in writing . . . are pleadings" as well.  Rule 3:18(a).  And "[t]he mention in a pleading of an accompanying exhibit, of itself and without more, makes such exhibit a part of the pleading."  Rule 1:4(i).

Miller filed this claim in April 2024, seeking to recover the storage fees, which he alleged were still accruing. In response to a request for admission stating that $120 per day for storage of a vehicle at an auto body repair shop is a usual and customary storage fee, Progressive responded, "It is admitted that some shops charge over $100 per day in the Northern Virginia, Charlottesville and Richmond areas, but most charge closer to $75 per day."

Progressive moved for partial summary judgment, arguing that Miller's claim is for unjust enrichment and that his recovery is thus limited to the vehicle's salvage value in accordance with *T. Musgrove Construction Co. v. Young*, 298 Va. 480, 486 (2020). Progressive further argued that Code § 46.2-644.01 limits Miller's recovery to the vehicle's value. Miller responded that his claim is for quantum meruit, but also that even if it is for unjust enrichment, his recovery should not be limited to the vehicle's salvage value.

After a hearing, the circuit court ruled in Progressive's favor. The court concluded that Miller's claim is for unjust enrichment, not quantum meruit, because Miller did not allege that the parties contracted for the storage of the customer's vehicle. The court also concluded that Miller's recovery was limited to the vehicle's salvage value. The court did not rule, however, on Progressive's Code § 46.2-644.01 argument.

The parties stipulated that the salvage value of the vehicle was $1,600 and asked the court to enter judgment for Miller, preserving Miller's objection to the ruling on the motion for partial summary judgment. Miller appeals.

ANALYSIS

Miller argues that the circuit court erred by finding his claim was for unjust enrichment rather than quantum meruit and by limiting his recovery to the car's salvage value under an unjust enrichment theory. Miller also argues that the court should not have granted summary judgment where there was a material fact genuinely in dispute—whether Progressive "requested" the services such that quantum meruit recovery would be justified. In addition to generally opposing Miller's arguments, Progressive argues that Miller did not preserve his argument that there was a material fact in dispute and urges, as an alternative ground for affirming the court's decision, that Code § 46.2-644.01 limits Miller's recovery to the vehicle's value.

## I. Miller stated a limited claim for quantum meruit and there are disputed facts about that claim.

"[S]ummary judgment shall not be entered unless no material fact is genuinely in dispute . . . and the moving party is entitled to such judgment as a matter of law." *Oreze Healthcare LLC v. E. Shore Cmty. Servs. Bd.*, 302 Va. 225, 230 (2023) (first alteration in original) (quoting *La Bella Dona Skin Care, Inc. v. Belle Femme Enters., LLC*, 294 Va. 243, 253 (2017)); *see also* Rule 3:20 ("Summary judgment may not be entered if any material fact is genuinely in dispute."). "[T]he trial court's determination that no genuinely disputed material facts exist and its application of law to the facts present issues of law subject to de novo review." *Oreze Healthcare LLC*, 302 Va. at 230 (quoting *La Bella Dona*, 294 Va. at 253).

On appeal of a summary judgment decision, we review the record applying the same standard the circuit court was required to adopt, "accepting as true those inferences from the facts that are most favorable to the nonmoving party, unless the inferences are forced, strained, or contrary to reason." *Stahl v. Stitt*, 301 Va. 1, 8 (2022) (quoting *Fultz v. Delhaize Am., Inc.*, 278 Va. 84, 88 (2009)). "[I]f the evidence is conflicting on a material point or if reasonable persons may draw different conclusions from the evidence, summary judgment is not appropriate."

*Fultz*, 278 Va. at 88. And a genuine dispute of material fact could arise "not only from the facts asserted but also from the reasonable inferences arising from those facts." *AlBritton v. Commonwealth*, 299 Va. 392, 403 (2021).

Miller argues that the court erred when it determined, as a threshold issue, that the allegations of his complaint did not assert a claim for quantum meruit, but a claim for unjust enrichment.[2] "[A] court is not permitted to enter a decree or judgment order based upon facts not alleged or on a right not pleaded and claimed." *Dabney v. Augusta Mut. Ins. Co.*, 282 Va. 78, 86 (2011) (quoting *Jenkins v. Bay House Assocs., L.P.*, 266 Va. 39, 43 (2003)). Thus, we first review the allegations of the complaint alone to determine whether Miller alleged a claim for quantum meruit. *See Majorana v. Crown Cent. Petrol. Corp.*, 260 Va. 521, 525-26 (2000).

"Quantum meruit recovery . . . is based upon an implied contract to pay the reasonable value of services rendered." *Mongold v. Woods*, 278 Va. 196, 203 (2009). An implied contract requires "consideration and mutuality of assent." *Spectra-4, LLP v. Uniwest Com. Realty, Inc.*, 290 Va. 36, 45 (2015). Quantum meruit is available, for example,

> when (1) the parties contract for work to be done, but the parties did not agree on a price, (2) the compensation mentioned is too indefinite, (3) there is a misunderstanding as to the price to be paid, or, (4) in some instances, the contract is void and of no effect.

---

[2] The hearing on Progressive's motion for summary judgment began with Progressive's attorney arguing that "this comes down to . . . whether the court determines, and it's a decision for the court not a decision for the jury, whether the standard here is, is this a case of unjust enrichment or is this a case of quantum meruit." Progressive's attorney argued that the claim was one of unjust enrichment, and Miller's attorney argued "under quantum meruit, he's entitled to a fair compensation," while also arguing what an appropriate measure of damages would be under an unjust enrichment theory. For this reason, we disagree that Miller failed to preserve his argument that he had a quantum meruit case by remarking at that same hearing that "[w]hat's disputed is the measure of damages." The record is clear that whether damages were proper under a quantum meruit or unjust enrichment theory, as well as what the right amount of damages should be, was disputed below.

*T. Musgrove*, 298 Va. at 486.  In such cases there is no express contract, so "the law *implies* a contract, that the party who performs the service shall be paid a reasonable compensation therefor." *Id.* at 485 (emphasis added) (quoting *Mongold*, 278 Va. at 203).  "The remedy available to the plaintiff is an award of damages amounting to the reasonable value of the work performed, less the compensation actually received for that work." *Mongold*, 278 Va. at 203.

By contrast, with unjust enrichment there is no contract—actual or implied—between the parties.  The elements of unjust enrichment are "(1) the plaintiff conferred a benefit on the defendant; (2) the defendant knew of the benefit and should reasonably have expected to repay the plaintiff; and (3) the defendant accepted or retained the benefit without paying for its value." *James G. Davis Constr. Corp. v. FTJ, Inc.*, 298 Va. 582, 597 (2020).  "The measure of recovery for unjust enrichment is limited to the benefit realized and retained by the defendant," even if the benefit is less than the reasonable value of the services rendered.  *See T. Musgrove*, 298 Va. at 486.  Thus, the measure of recovery under unjust enrichment and quantum meruit is "not necessarily the same." *Id.*

In a case that also involved an automotive service provider seeking compensation for services rendered for a vehicle that had been in an accident, the Supreme Court explained that these two doctrines overlap and "can easily be conflated." *Id.* at 483-485.  The key difference between the two is whether the defendant *requested* the services (potentially forming a contract) or only knowingly received the services.  *Id.* at 486.  Or as the Supreme Court put it, "A plaintiff can seek recovery in *quantum meruit* when the work was done at the instance and request of another. . . . When the defendant has not requested the plaintiff's services, a plaintiff's claim is for unjust enrichment." *Id.*

Just as quantum meruit is not unjust enrichment, quantum meruit is not detrimental reliance.  *Mongold*, 278 Va. 203-04.  Virginia does not recognize the doctrine of promissory

estoppel, and quantum meruit is not an end run around that fact. *Id.* Promissory estoppel, where it is available, requires four elements: "(1) a promise, (2) which the promisor should reasonably expect to cause action by the promisee, (3) which does cause such action, and (4) which should be enforced to prevent injustice to the promisee." *Id.* at 202 (quoting *Barnhill v. Veneman*, 524 F.3d 458, 475-76 (4th Cir. 2008)). "Quantum meruit recovery, by contrast, is based upon an implied contract to pay the reasonable value of services rendered." *Id.* at 203 (quoting *Hendrickson v. Meredith*, 161 Va. 193, 198 (1933)).

We now apply those principles here, to a complaint that is no model of clarity. In the opening paragraph it "moves [the trial court] for judgment against Meredith Blair Bearov," the owner of the vehicle, while otherwise naming "Progressive Universal Insurance Company" (the wrong company)[3] as the defendant. The complaint also does not state any theory for recovery and merely "moves for judgment against Defendant." But we review the complaint in the light "most favorable to the nonmoving party, unless the inferences are forced, strained, or contrary to reason." *Stahl*, 301 Va. at 8 (quoting *Fultz*, 278 Va. at 88).

The complaint alleges that Bearov dropped her car off at Miller's shop "for a repair estimate." It also alleges that Bearov, Miller, and Progressive communicated in reference to the repair estimate while the car was in his lot, and Progressive representatives visited twice to inspect the car. Progressive then bought the car from Bearov after declaring it a total loss and "contacted Miller to obtain the cost for the storage of Bearov's car." After Miller provided the information, according to the complaint, Progressive told Miller three times that they would remove the car but never did so.

---

[3] The court later, on the agreed motion of counsel, corrected the "misnomer" and changed the defendant to Progressive Gulf Insurance Company.

Looking first at the period of time starting when Bearov dropped her car off at Miller's shop and ending when Progressive bought the car from her after declaring it a total loss, we can find no facts alleging the existence of an implied contract between Miller and Progressive. It was Bearov, not Progressive, that selected Miller's shop and dropped off her car. Miller prepared an estimate of the cost to repair the car and sent it to Bearov and Progressive. That estimate, sent on July 24, 2023, calculated the total repair cost as $16,308.40, and estimated that it would take 20 days to repair the vehicle.[4] The estimate did not mention any storage costs. The complaint alleges Progressive countered with a repair estimate of $4,968.85 on July 24 and that after Miller suggested reinspection was necessary, Progressive did so after August 24 and declared the vehicle a total loss. The complaint does not allege that any conversation occurred between Progressive and Miller about the payment of storage fees during this period, and none of the facts alleged support an inference that there was any agreement about storage at the time. At best, Progressive's actions may have induced reliance on the part of Miller, but a promise that induces reliance is not enough to state a claim for quantum meruit. If there was any implied contract during this period, it was only between Miller and Bearov.

At some point after this, however, Progressive received the title to the car. The complaint alleges that Progressive contacted Miller on September 19, 2023 "to obtain the cost for the storage of Bearov's car" and that "Miller provided the information."[5] The complaint also alleges "Progressive has told Miller three times they would remove the car, but Progressive has not done

---

[4] The complaint attached an exhibit purporting to be the repair estimate Miller sent to Bearov and Progressive, but the face of the exhibit makes clear that it was actually prepared much later on September 21, 2023 and estimates storage costs from June 12 through September 21. Miller attached the correct estimate from July in his opposition to the summary judgment motion.

[5] According to Miller's response in opposition to the summary judgment motion, this is the invoice prepared on September 21 and matches the invoice that was attached to the complaint as Exhibit A.

so." As alleged, after Progressive obtained title to the vehicle, it contacted Miller about the storage fees, not the other way around. A fair inference is that, at least at this point, Progressive understood that storage fees were part of the services Miller was providing until it could remove the vehicle. It is also reasonable to infer that when Progressive contacted Miller to obtain the cost of storage, it requested that Miller continue to store the car until Progressive could remove it (which it promised to do three times according to the complaint).

Quantum meruit allows a party to recover where he has performed a service "at the instance and request of another" but there is a misunderstanding or disagreement about the price. *T. Musgrove*, 298 Va. at 486. Thus, the complaint, read in the light most favorable to Miller, alleges facts sufficient to support recovery under a theory of quantum meruit and to "raise a material question of fact not amenable to resolution by summary judgment." *Majorana*, 260 Va. at 526.

Having concluded that the circuit court should not have granted summary judgment on the complaint alone, we now consider whether the court should have granted summary judgment based on the undisputed facts established by "the pleadings, the orders . . . made at a pretrial conference, [or] the admissions . . . in the proceedings." Rule 3:20. The facts in Progressive's responses to Miller's requests for admission further support the inference that Bearov and Progressive requested the storage services from Miller. Progressive's admissions do not substantially contradict the relevant allegations of the complaint. To start, Progressive admits to calling Miller to determine the amount of the storage fees after acquiring the car from Bearov. Progressive admits to offering Miller the car as payment for storage fees. Moreover, although Progressive disputes that $120 per day is a fair storage fee, it concedes that "most" auto shops charge storage fees "closer to $75 per day," thus acknowledging that storage services are expected to be provided when a customer drops a car off at an auto shop. Progressive never disputed that it

owed storage fees in some amount. Rather, it attempted to bargain with Miller about the amount, including by offering to give him Bearov's car as payment.

"[I]f the evidence is conflicting on a material point or if reasonable persons may draw different conclusions from the evidence, summary judgment is not appropriate." *Fultz*, 278 Va. at 88. Reasonable persons could conclude that when Progressive took ownership of the car, it understood that Miller had been providing storage services for Bearov, that Miller would continue to provide them for Progressive, and that Progressive was agreeing to pay for the same. There are numerous disputed facts about whether these conversations occurred, what the details were that would impact whether there was in fact an implied contract regarding the storage fees, and at what point any contract ended due to the apparent deterioration of the relationship between the parties. Thus, the circuit court should have denied the motion for summary judgment because material facts related to Miller's quantum meruit claim remain in dispute.

II. Miller's potential unjust enrichment damages are not limited to the salvage value of the vehicle.

Although we hold that Progressive is not entitled to summary judgment on Miller's quantum meruit claim, Miller may nonetheless end up seeking to recover under an unjust enrichment theory after further factual development. Because this issue is "likely to arise in a new trial on remand," we take up Miller's argument that if he must recover under an unjust enrichment theory, he should not be limited to the vehicle's salvage value. *Emerald Point, LLC v. Hawkins*, 294 Va. 544, 555 (2017).

The circuit court relied entirely on *T. Musgrove* in limiting Miller's recovery to the value of the vehicle. There, the claimant towing company brought the defendant's abandoned and overturned truck upright, removed it from the side of the road, and then stored the truck, all without the defendant's knowledge. *See T. Musgrove*, 298 Va. at 483-84. The Supreme Court relied on the Restatement (Third) of Restitution and Unjust Enrichment in limiting the claimant's

damages to the value of the truck. *Id.* at 488. Section 21 of the Restatement specifically deals with situations in which a claimant "takes effective action to protect another's property from threatened harm" where "the circumstances justify the decision to intervene without request" and "it is reasonable to assume the owner would wish the action performed." *Id.* (quoting Restatement (Third) of Restitution and Unjust Enrichment § 21 (2011)). The section goes on to say that "[u]njust enrichment *under this section* is measured by the loss avoided or by a reasonable charge for the services provided, whichever is less." *Id.* (emphasis added) (quoting Restatement (Third) of Restitution and Unjust Enrichment, *supra*, § 21). When a defendant's property is facing a threatened harm, "the benefit realized and retained by the defendant," for unjust enrichment purposes, is the "loss avoided." *See id.* at 486, 488.

For this reason, when the claimant towing company in *T. Musgrove* acted (unbeknownst to the defendant) to protect his property from harm, the towing company could only recover for the harm avoided—the value of the truck that, without the towing company's help, the truck owner would have lost. *Id.* at 487-88. This case does not state a blanket rule that a party seeking to recover vehicle storage fees under an unjust enrichment theory is limited to recovering the value of the vehicle when there was no action to protect another's property from threatened harm. It also does not address the situation where a party other than the owner of property realizes a benefit from the action of storing the vehicle.

Considering the period between when Bearov dropped off her vehicle at Miller's garage and when Progressive took title to the car, the complaint reasonably alleges that Progressive received a benefit when Miller stored the vehicle that differs from the salvage value. The complaint alleges that, after Bearov dropped off her car on June 19, Progressive did not send an offer of what it would pay to repair the vehicle ($4,968.85) until more than 35 days later. The complaint then alleges that Progressive only reinspected the car at Miller's urging and did not do

- 11 -

so until after August 24, 2023, when it then declared the car a total loss. It can be reasonably inferred from the facts pleaded that Progressive received a benefit by having Miller store the vehicle for more than two months while it decided what ultimately to do with the vehicle and that this benefit to Progressive is not obviously the same thing as the value of the vehicle.[6]

This is not a case where Miller took "action" to protect an owner's vehicle from loss. So it does not fall under the Restatement section dealing with unrequested intervention to protect someone's property from harm, or the analysis in *T. Musgrove* applying the same. If unjust enrichment applies to this case, it would be the ordinary situation—conferral of a benefit of which the defendant was aware and for which it should reasonably have expected to pay. *See James G. Davis*, 298 Va. at 597. Thus, the proper measure of damages would be the benefit conferred on the defendant, which is the reasonable value of storing the car. *See T. Musgrove*, 298 Va. at 486. Whether Miller can prove he conferred a benefit on Progressive, and precisely when the benefit started and stopped, are disputed questions for trial.

III. Code § 46.2-644.01 does not limit Miller's recovery in this case.

Progressive also argues that the circuit court was correct for a different reason—because Code § 46.2-644.01 limits Miller's available damages for storage fees to the salvage value of the vehicle. We disagree. To partially protect "keeper[s] of vehicles" from the risk of nonpayment for towing, storing, recovering, and caring for a vehicle, Code § 46.2-644.01 creates a lien upon

---

[6] In fact, limiting Miller's damages to the value of the vehicle is particularly perverse given that Miller's actions—in notifying Progressive that its initial estimate was flawed and continuing to store the car until another Progressive evaluator could take a second look at the vehicle—led to an overall decrease in the assessed value of the car. Whereas Progressive originally thought the car's value was such that it was worth repairs, the second evaluation revealed it was a total loss. The ultimate value of the car only decreased because Miller kept storing the car while Progressive came out to do another appraisal. If the value of the vehicle was the right benchmark for the benefit Progressive received over these two months, then Miller would have arguably received more compensation for a shorter period of storage if he had not urged Progressive to come back a second time.

- 12 -

that vehicle to benefit the "keeper," in the amount of the services rendered but not to exceed the value of the vehicle. The holder of such a lien may enforce it by selling the vehicle at public auction under Code § 46.2-644.03. Progressive argues that this statute is an independent reason that Miller's recovery under an unjust enrichment theory must be limited to the vehicle's value. Miller argues that he does not qualify as a "keeper of vehicles" under the statute.

Assuming without deciding that Miller is a "keeper of vehicles," we agree that Miller's lien under Code § 46.2-644.01 would be limited to the salvage value of the vehicle. But the existence of this limited statutory remedy to vehicle keepers does not limit the recovery vehicle keepers may obtain in separate claims asserted in court. Code § 46.2-644.01 merely limits the recovery a vehicle keeper may obtain if they use the enforcement mechanism of exercising their right to sell the vehicle under Code § 46.2-644.03, and it does not apply to limit damages in a civil action.

CONCLUSION

Miller was not limited to recovering under an unjust enrichment theory under the undisputed facts. Even under an unjust enrichment theory, he was not limited to recovering the vehicle's salvage value. We therefore vacate the circuit court's judgment and remand the case for further proceedings.

*Vacated and remanded.*